[No. A132611. First Dist., Div. Three. Jan. 8, 2014.]

NOREEN CARDINALE, Plaintiff and Respondent, v.
DANIEL R. MILLER, JR., et al., Defendants and Appellants.

[No. A133065. First Dist., Div. Three. Jan. 8, 2014.]

NOREEN CARDINALE, Plaintiff and Respondent, v.
KEITH KNAPP et al., Defendants and Appellants.

**[CERTIFIED FOR PARTIAL PUBLICATION\*]**

---

\*Pursuant to California Rules of Court, rules 8.1105(b) and 8.1110, this opinion is certified for publication with the exception of parts I., II., and III. of the Discussion.

### COUNSEL

Law Offices of Michael Heath, Michael T. Heath; Greines, Martin, Stein & Richland, Robin Meadow, Sheila A. Wirkus; Rice & Bronitsky, Charles Bronitsky and Julia Wei for Defendants and Appellants.

Caron & Associates, Martha L. Caron; Law Offices of Mary Margaret Bush and Mary M. Bush for Plaintiff and Respondent.

### OPINION

**SIGGINS, J.**—Keith Knapp and his company Home Loan Service Corporation (CHL) tread a path to this court that is well worn by their various codefendants in Noreen Cardinale's long-fought action arising from an abusive loan scheme. (See *Cardinale v. Miller* (May 17, 2010, A125546) [nonpub. opn.] (*Cardinale v. Miller 3*); *Cardinale v. Miller* (Jan. 31, 2005, A100606) [nonpub. opn.]; see also *Cardinale v. Fitz-Stephens* (May 28, 2002, A093851) [nonpub. opn.].) After a jury found Knapp and CHL[1] liable for

---

[1] For convenience, we will refer to Knapp and CHL jointly as appellants or the broker defendants.

conspiring to engage in fraudulent transfers to avoid enforcement of Cardinale's judgments against Daniel R. Miller, Jr. (Miller), they contend the evidence is insufficient to support the judgment, the special verdict form was critically flawed, the jury's findings are irreconcilably inconsistent, and there was no legal basis for an award of attorneys' fees. In the unpublished portion of this opinion we conclude that, in most significant respects, these assertions have no merit. However, our review of the record confirms that a portion of the damage award lacks evidentiary support, and it must be reduced. Accordingly, we modify the damage award and affirm the judgment as modified. In the published portion of this opinion we affirm the award of attorneys' fees.

## BACKGROUND

Much of the history of this case is discussed in our prior opinions, and we will repeat only what is necessary to explain our disposition. In 2008, some 10 years after she first sued Miller and others for fraud and related torts, Cardinale sued Miller, Knapp, and various other individuals and entities to enforce the judgment she won against Miller in her fraud suit and a related bankruptcy action. Her complaint alleged that Miller, aided and abetted by other defendants, operated a "refinance Ponzi scheme" through which he shielded his assets from Cardinale's attempts to collect on her judgments. The complaint alleged Miller did this by obtaining loans on properties he owns and controls through sham entities and family members, and converting the loan proceeds to his own personal use. He would then either force a discounted payoff of prior loans without recording a reconveyance, so that to his creditors the properties appeared to have no equity, or would simply allow the loans to default.

Cardinale alleged that Knapp and CHL salesperson Derald Kenoyer conspired in this scheme to drain the equity from Miller's property by brokering at least 23 loans for Miller's sham entities in exchange for highly remunerative brokerage commissions. Knapp "knew or should have known that Miller was the actual recipient of the loan proceeds, that the point of Miller and Kenoyer's enterprise was to defraud Miller's creditors, and that Miller had a dismal record of defaults and foreclosures. Knapp allegedly allowed Miller and Kenoyer's activities to continue so he could reap extravagant commissions. The complaint alleged Knapp knew Kenoyer was arranging the loans without loan applications, reference to lending standards, or regard to the borrowers' creditworthiness; that Knapp knew or should have known the borrowing entities were a sham; and that the loans were inadequately secured and being used to get money out of the secured properties. The complaint further allege[d] Knapp deliberately breached his duty to supervise and regulate Kenoyer because Kenoyer's activities were extremely profitable." (*Cardinale v. Miller 3, supra*, A125546.)

The trial court sustained Knapp's demurrer to Cardinale's cause of action for conspiracy to commit fraudulent transfers, but this court held the complaint sufficiently stated a claim for fraudulent transfers against Miller and the related conspiracy claim against the broker defendants. (*Cardinale v. Miller 3, supra,* A125546.) In the meantime, Cardinale obtained a default judgment against Miller. After she prevailed on her appeal, Cardinale proceeded to a jury trial against the broker defendants and Daniel Miller, Sr. (Miller Senior).[2]

We will save most discussion of the evidence for our discussion of the discrete legal issues raised by this appeal. Suffice it to say that the jury found in favor of Cardinale on all issues. There were fraudulent transfers of property interests from Miller to other defendants; Miller controlled the entities that held title to the subject properties; and he fraudulently transferred his legal or equitable interest in one or more of those properties. On the conspiracy count, the broker defendants and Miller Senior were found to have conspired with or aided and abetted Miller "in stripping his equity in properties for the purpose of hindering, delaying or defrauding" Cardinale, and that their conduct was a substantial factor in causing her loss. The jury awarded compensatory damages of $2,170,593. In a second phase of trial on punitive damages, the jury added a punitive award of $900,000, comprised of $300,000 against Knapp individually, $500,000 against CHL, and $100,000 against Miller Senior. Cardinale was also awarded $293,937.50 in attorneys' fees.

This appeal timely followed.

## DISCUSSION

### I.–III.*

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

### IV.   *Attorneys' Fees*

Cardinale moved for attorneys' fees under Code of Civil Procedure section 685.040,[7] which authorizes a judgment creditor to recover fees incurred in enforcing a judgment if the underlying judgment included an award of fees as

---

[2] Miller Senior, Miller's father, settled with Cardinale after trial and has dismissed his appeal from the judgment. Defendants Kenoyer and Patrice Miller, Miller's wife, filed bankruptcy proceedings shortly before trial. To avoid confusion, we will refer to Patrice Miller by her first name.

[*] See footnote, *ante,* page 1020.

[7] Unless otherwise noted, further statutory citations are to the Code of Civil Procedure.

costs.[8] (§§ 685.040, 1033.5, subd. (a)(1).) The court found section 685.040 applied and awarded Cardinale $293,937.50 in reasonable and necessary attorneys' fees. Appellants challenge only the statutory basis for awarding fees in an UFTA (Uniform Fraudulent Transfer Act; Civ. Code, § 3439 et seq.) action where the defendants ordered to pay the fees are third parties to the underlying contractual fee provision. The issue presents a strictly legal question, which we review de novo. (*Jaffe v. Pacelli* (2008) 165 Cal.App.4th 927, 934 [82 Cal.Rptr.3d 423] (*Jaffe*).)

■ Appellants correctly state that UFTA does not itself authorize a fee award, and Cardinale concedes the point. The question, rather, is whether section 685.040 supports an award of fees as costs against a party who conspires to help a judgment debtor evade efforts to enforce a judgment that includes a contractual fee award. The answer lies primarily in the statutory language. Section 685.040 provides: "The judgment creditor is entitled to the reasonable and necessary costs of enforcing a judgment. Attorney's fees incurred in enforcing a judgment are not included in costs collectible under this title unless otherwise provided by law. *Attorney's fees incurred in enforcing a judgment are included as costs collectible under this title if the underlying judgment includes an award of attorney's fees to the judgment creditor pursuant to subparagraph (A) of paragraph (10) of subdivision (a) of Section 1033.5.*" (Italics added.) ■ Review of section 1033.5, subdivision (a)(10)(A), shows that attorneys' fees may be recovered as costs when authorized by contract.

■ Appellants contend that section 685.040 authorizes the recovery of fees only from the original judgment debtor, and therefore that they, as nonparties to the underlying judgment, are beyond its reach. But section 685.040 does not say so. Rather, it imposes just "two requirements before a motion for an award of postjudgment attorney fees may be awarded as costs: (1) the fees must have been incurred to 'enforce' a judgment; and (2) the underlying judgment had to include an award for attorney fees pursuant to Code of Civil Procedure section 1033.5, subdivision (a)(10)(A) . . . ." (*Jaffe, supra*, 165 Cal.App.4th at p. 935.) Cardinale's action satisfies both criteria. While in the usual scheme of things the target of a fee motion under section 685.040 is presumably the original judgment debtor, the Legislature did not so restrict the provision's scope. Rather, the statute by its terms is broad enough to encompass fees expended to enforce a judgment against third parties who conspired with the judgment debtor to evade its enforcement. ■ We are not at liberty to narrow the statutory language " 'to make it conform to a presumed intention which is not expressed.' " (*California Teachers Assn. v. Governing Bd. of Rialto Unified School Dist.* (1997) 14

---

[8] It is undisputed that Cardinale's underlying judgment against Miller included an award of contractual fees.

Cal.4th 627, 633 [59 Cal.Rptr.2d 671, 927 P.2d 1175]; see *Ailanto Properties, Inc. v. City of Half Moon Bay* (2006) 142 Cal.App.4th 572, 582 [48 Cal.Rptr.3d 340] [" 'If the [statutory] language is clear, courts must generally follow its plain meaning unless a literal interpretation would result in absurd consequences the Legislature did not intend.' "].)

■  Nor is it critical here that appellants were not parties to the contractual fee provision between Miller and Cardinale. As *Jaffe* explains, "[g]enerally, when a judgment is rendered in a case involving a contract that includes an attorney fees and costs provision, the 'judgment extinguishes all further contractual rights, including the contractual attorney fees clause.' " (*Jaffe, supra*, 165 Cal.App.4th at p. 934.) As a consequence, attorneys' fees incurred to enforce such a judgment can only be recovered if there is express statutory authorization, such as is provided by section 685.040. (165 Cal.App.4th at p. 934.) "Pursuant to the current version of the statute, the award of postjudgment attorney fees *is not based on the survival of the contract, but is instead based on the award of attorney fees and costs in the trial judgment.* [Citation.] This is in accord with the extinction by merger analysis providing that postjudgment rights are governed by the rights in the judgment and not by any rights arising from the contract." (*Id.* at p. 935, italics added.) Appellants' status as strangers to Cardinale's contract with Miller does not immunize them from liability under section 685.040.

■  Appellants also contend the fee award is improper because "the action against [them] was not to enforce the judgment but rather to pursue an independent tort claim" sounding in conspiracy. Their premise mischaracterizes both the facts and the law. As a factual matter, this action *was* to collect the unpaid judgment—as appellants themselves vociferously note in challenging the damages awarded in excess of that amount. On the law, "Conspiracy is not a cause of action, but a legal doctrine that imposes liability on persons who, although not actually committing a tort themselves, share with the immediate tortfeasors a common plan or design in its perpetration. [Citation.] By participation in a civil conspiracy, a coconspirator effectively adopts as his or her own the torts of other coconspirators within the ambit of the conspiracy. [Citation.] In this way, a coconspirator incurs tort liability coequal with the immediate tortfeasors." (*Applied Equipment Corp. v. Litton Saudi Arabia Ltd.* (1994) 7 Cal.4th 503, 510–511 [28 Cal.Rptr.2d 475, 869 P.2d 454].) ■  Plainly, Cardinale's legal pursuit of the broker defendants was no less to enforce the judgment than was her fraudulent transfer claim against Miller. We conclude the fee award was authorized under section 685.040, and the broker defendants are liable for Cardinale's fees even though they were neither parties to the original action giving rise to the judgment or the contract on which that judgment was based.

## DISPOSITION

The award of compensatory damages in the judgment is reduced to $1,387,810. As so modified, the judgment is affirmed. Cardinale is entitled to her costs on appeal.

Pollak, Acting P. J., and Jenkins, J., concurred.