Filed 5/31/19

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| ARKADY BERGER,<br><br>　　　Plaintiff and Appellant,<br><br>v.<br><br>GARY VARUM et al.,<br><br>　　　Defendants and Respondents. | A150629<br><br>(San Francisco City & County<br>Super. Ct. No. CGC-14-542126) |

　　　Plaintiff Arkady Berger sought to collect an underlying judgment against defendant Gary Varum and his company, defendant Telesis Engineers, Inc. (jointly the Varum defendants). Berger alleged the Varum defendants fraudulently transferred assets to other defendants in an effort to avoid paying the judgment. While Berger's enforcement action against the Varum defendants and defendants Alex Varum, Charles Thiel, Irina Varum, Natalie Kreigel, 1122 University Avenue, LLC, 1122 University, LLC, Gia Group, LLC, California Family Company, LLC, California Family, LLC, CWR Holdings, LLC, Bay Area Family Company, LLC, and Bay Area Family, LLC (jointly defendants) was pending, the Varum defendants paid the outstanding judgment. However, Berger amended his complaint to assert various consequential damages caused by the Varum defendants' delay in payment. Defendants subsequently filed a demurrer alleging Berger was not entitled to recover damages above the amount of the judgment and his enforcement costs, which the trial court granted.

　　　Berger now appeals from the trial court's judgment following its order sustaining, without leave to amend, defendants' demurrer. Berger contends his complaint asserts a

common law fraudulent transfer claim, which gives rise to consequential and punitive damages.  We agree and reverse the trial court's order and subsequent judgment.[1]

## I.  FACTUAL AND PROCEDURAL BACKGROUND

### A.  *The Underlying Action*

Berger hired the Varum defendants to design and provide technical support for constructing a building in San Francisco.[2]  Significant problems with the Varum defendants' design emerged during demolition and construction, which resulted in Berger having to purchase an adjacent property.  In 2013, Berger obtained an approximate $2.7 million judgment against the Varum defendants resulting from a prior lawsuit between the parties.  The Varum defendants subsequently appealed but did not post a bond staying enforcement of the judgment.

While that appeal was pending, Berger filed a complaint against defendants for action on judgment, return of distributions to shareholders of or investors in judgment debtor, and fraudulent transfer.  The complaint alleged various defendants received distributions of money, property, interests in real estate, and other items of value from the Varum defendants without paying adequate consideration.  The complaint sought enforcement of the judgment, various relief from the fraudulent transfers, costs, exemplary damages, and other unspecified relief.

In 2015, this court affirmed the judgment.  (*Berger I*, *supra*, A141112.)  Approximately seven months later, the Varum defendants paid the judgment, and Berger filed an acknowledgement of satisfaction of judgment.

Berger subsequently filed a second amended complaint (complaint) modifying the causes of action in light of the Varum defendants' satisfaction of judgment.  That complaint asserted two causes of action against defendants for fraudulent conveyance

---

[1] On July 20, 2018, Berger filed a request for judicial notice of four orders entered by the San Francisco Superior Court in *Mirov v. Berger* (case No. CGC-07-462479).  This request is denied as such materials are not relevant to our disposition of this appeal.

[2] We take judicial notice of our prior nonpublished opinion, *Berger v. Varum* (Dec. 22, 2015, A141112) (*Berger I*).  (Evid. Code, § 452, subd. (d).)

2

pursuant to Civil Code section 3439 and conspiracy to defraud. Between entry of judgment and satisfaction of judgment, the complaint asserts the Varum defendants utilized various mechanisms to hide the amount and ownership of their assets and their financial condition, such as through corporate entities, asset purchase agreements, conveyances, and asset transfers without consideration. Specifically, the complaint alleges the Varum defendants distributed money, accounts, property, interests in real estate, and other items of value to various individuals and entities without requiring them to pay adequate consideration. The complaint asserts the Varum defendants took these actions to intentionally "hinder, delay or defraud" Berger from collecting payment on the judgment. The complaint further alleges the individuals and entities to whom these assets were distributed "knowingly acted in concert with [the Varum defendants] to effect the fraudulent transfers" and conspired to hide these assets to obstruct Berger's efforts to collect on the judgment. As a result of this conduct, Berger asserts he incurred consequential damages and suffered emotional distress.

Defendants demurred to the complaint. They asserted the satisfaction of judgment made Berger whole, and Berger was not entitled to recover damages above the amount of the judgment and his enforcement costs. The trial court sustained defendants' demurrer without leave to amend. It concluded Berger could not pursue his fraudulent transfer claim because Berger "cites no published authority, and the court is aware of none, that permits a judgment creditor to seek consequential and/or punitive damages resulting from the delay in payment of a judgment due to fraudulent transfers that occurred prior to satisfaction of the judgment. Although [Berger] contends that he is entitled to seek 'regular fraud damages,' he has not alleged, nor has he shown that he can allege a 'regular fraud' claim." Berger timely appealed.

## II. DISCUSSION

### A. *Standard of Review*

We independently review a trial court's order sustaining a demurrer. (*Brown v. Deutsche Bank National Trust Co.* (2016) 247 Cal.App.4th 275, 279 (*Brown*).) "In doing so, this court's only task is to determine whether the complaint states a cause of action.

3

[Citation.] We accept as true all well-pleaded allegations in the operative complaint, and we will reverse the trial court's order of dismissal if the factual allegations state a cause of action on any available legal theory. [Citation.] We treat defendants' demurrer as admitting all properly pleaded material facts, but not contentions, deductions, or conclusions of fact or law." (*Ibid.*) " 'We also consider matters which may be judicially noticed.' [Citation.] . . . [and] give the complaint a reasonable interpretation, reading it as a whole and its parts in their context." (*Blank v. Kirwan* (1985) 39 Cal.3d 311, 318.)

When " 'the trial court sustains a demurrer without leave to amend, we review the determination that no amendment could cure the defect in the complaint for an abuse of discretion. [Citation.] The trial court abuses its discretion if there is a reasonable possibility that the plaintiff could cure the defect by amendment.' " (*Brown*, *supra*, 247 Cal.App.4th at p. 279.)

**B. *Common Law Fraudulent Transfer***

The operative complaint alleges two causes of action: fraudulent transfer under Civil Code section 3439[3] and conspiracy to defraud. It seeks to recover various "General and Special damages." On appeal, Berger does not contend he can recover consequential or punitive damages under the UVTA. Rather, Berger maintains he is entitled to assert a claim for common law fraudulent transfer, which gives rise to such remedies. We agree.

**1. The UVTA Does Not Preclude a Common Law Action**

Section 3439.12 of the Civil Code states: "Unless displaced by the provisions of this chapter, the principles of law and equity, including . . . the law relating to principal and agent, estoppel, laches, fraud, misrepresentation, duress, coercion, mistake, insolvency, or other validating or invalidating cause, supplement its provisions." Case law has established the remedies specified in the UVTA are cumulative and not the exclusive remedy for fraudulent conveyances. (See, e.g., *Macedo v. Bosio* (2001)

---

[3] Civil Code section 3439 et seq. is the Uniform Voidable Transactions Act (UVTA). In 2015, the former Uniform Fraudulent Transfer Act (UFTA) was renamed as the UVTA. (Stats. 2015, ch. 44, § 3, p. 1456.) We will refer to the act by its current name, UVTA, although some relevant case law employs the former terminology.

4

86 Cal.App.4th 1044, 1051 (*Macedo*).) "They may also be attached by, as it were, a common law action." (*Ibid.*) By its terms the UVTA was intended to supplement, not replace, common law principles relating to fraud. (*Wisden v. Superior Court* (2004) 124 Cal.App.4th 750, 758 [UVTA remedies " 'are cumulative to the remedies applicable to fraudulent conveyances that existed before the uniform laws went into effect' "]; *Cortez v. Vogt* (1997) 52 Cal.App.4th 917, 930 [UVTA "makes clear its remedies are cumulative to preexisting remedies for fraudulent conveyances"].)

Traditionally, creditors could bring fraudulent transfer cases under common law. (See, e.g., *Macedo*, *supra*, 86 Cal.App.4th at p. 1051; *Wisden v. Superior Court*, *supra*, 124 Cal.App.4th at p. 758 [UVTA does not supersede common law of fraudulent transfer].) Because the UVTA is not intended to replace such common law but merely supplement it, we conclude Berger may bring such a claim under common law.[4]

## 2. Berger Has Stated a Cause for Common Law Fraudulent Transfer

Having concluded the UVTA does not preclude Berger from bringing his claim under common law, we next must assess whether Berger adequately pled such a claim.

Defendants do not contend Berger failed to allege the details of the fraudulent transfers with sufficient detail. Rather, they contend Berger has failed to allege a recoverable injury arising from such transfers. "A well-established principle of the law of fraudulent transfers is, 'A transfer in fraud of creditors may be attacked only by one

---

[4] The Varum defendants rely on *Cardinale v. Miller* (2014) 222 Cal.App.4th 1020, to contend the complaint is actually an action to enforce a judgment rather than a fraudulent transfer claim. That case, however, is distinguishable. In *Cardinale*, the defendants challenged the statutory basis for awarding fees in an UFTA action, asserting in part the fee award was "improper because 'the action against [them] was not to enforce the judgment but rather to pursue an independent tort claim' sounding in conspiracy." (*Id.* at pp. 1025–1026.) Our colleagues in Division Three noted, "*As a factual matter*, this action *was* to collect the unpaid judgment," and concluded the fee award was authorized under Code of Civil Procedure section 685.040 (part of title 9, Enforcement of Judgments). (*Cardinale*, at p. 1026, italics added.) Nothing in the opinion suggests a party cannot bring or seek damages based on a common law fraudulent transfer claim. (Cf. *Filip v. Bucurenciu* (2005) 129 Cal.App.4th 825, 837 ["In fraudulently transferring property, tortious conduct occurred."].)

who is injured thereby. Mere intent to delay or defraud is not sufficient; injury to the creditor must be shown affirmatively. In other words, prejudice to the plaintiff is essential.' " (*Mehrtash v. Mehrtash* (2001) 93 Cal.App.4th 75, 80 (*Mehrtash*); accord *Bennett v. Paulson* (1935) 7 Cal.App.2d 120, 123 [" 'The intent to delay or defraud creditors is not enough; there must also be a resulting injury to the creditor, which must be affirmatively shown.' "].)[5]

Here, Berger has alleged a range of damages stemming from defendants' conduct. These include items such as liens and interest on those liens, lost rents, early IRA redemptions and related penalties and taxes, losses due to diminished credit scores and credit, increased financing fees, foreclosure fees, emotional distress, exemplary damages, and costs. Generally, "[t]ort damages are awarded to fully compensate the victim for all the injury suffered. [Citation.] There is no fixed rule for the measure of tort damages . . . . The measure that most appropriately compensates the injured party for the loss sustained should be adopted." (*Santa Barbara Pistachio Ranch v. Chowchilla Water Dist*. (2001) 88 Cal.App.4th 439, 446–447; see also Civ. Code, § 3333 [measure of tort damages is the "amount which will compensate for all the detriment proximately caused thereby, whether it could have been anticipated or not"].) Nothing in the UVTA alters this general rule. As noted above, UVTA remedies " 'are cumulative to the remedies applicable to fraudulent conveyances that existed before the uniform laws went into effect.' " (*Wisden v. Superior Court*, *supra*, 124 Cal.App.4th at p. 758.) And UVTA specifically authorizes "[a]ny other relief the circumstances may require." (Civ. Code, § 3439.07, subd. (a)(3)(C).) Accordingly, the damages alleged by Berger fall within the

_____

[5] Berger contends a demurrer was an improper vehicle to challenge his complaint because it attacked his prayer for relief rather than the sufficiency of the allegations. Because an affirmative showing of injury is required and the only alleged injuries are those that Berger seeks to recover through his consequential damages claim, the complaint was properly challenged via demurrer. (Cf. *Rossberg v. Bank of America, N.A.* (2013) 219 Cal.App.4th 1481, 1499–1500 [demurrer sustained as to fraud claim because plaintiffs "failed to allege any connection between their reliance . . . and any specific damages that reliance caused"].)

6

scope of recoverable tort damages and satisfy the damage element for a fraudulent transfer claim for purposes of demurrer.  (See *Brown*, *supra,* 247 Cal.App.4th at p. 279 ["We accept as true all well-pleaded allegations in the operative complaint"].)

Certain cases, while not awarding consequential damages, have recognized the availability of such damages.[6]  For example, in *Mehrtash, supra,* 93 Cal.App.4th 75, the plaintiff ex-wife obtained a judgment for unpaid spousal support and sought to have a quitclaim deed given by her former husband to his stepchildren set aside under the UFTA.  However, the property was so heavily encumbered it had no value as an asset.  The court rejected her claim, concluding, "Plaintiff produced no evidence that the value of the property could support any net recovery for her in the event the conveyance were set aside."  (*Mehrtash*, at p. 81.)  In doing so, however, the court expressly noted the

---

[6] Berger cites *Jhaveri v. Teitelbaum* (2009) 176 Cal.App.4th 740, to support his position.  However, we do not find *Jhaveri* on point.  That case addressed whether the trial court abused its discretion in allocating the value of a settlement between one debtor, Dubois, and his spouse.  (*Id.* at pp. 747–748.)  The settlement arose from an unpaid judgment and subsequent enforcement action against various debtors and their spouses.  (*Id.* at p. 744.)  The plaintiffs objected to the trial court's allocation of half the settlement value to the enforcement action asserted against Dubois's spouse rather than allocating the entire settlement to the outstanding judgment.  (*Id.* at p. 747.)  The Court of Appeal concluded the trial court did not abuse its discretion in so allocating the settlement value.  (*Id.* at p. 755.)  It explained (1) the complaint sought "general, special and punitive damages" against the spouse, (2) a RICO claim would have been asserted against her had she and Dubois not entered into the settlement, and (3) the statutory UFTA claim "is not the exclusive remedy by which fraudulent transfers may be attacked" and "the allegations could be construed as encompassing common law tort actions . . . ."  (*Jhaveri*, at pp. 754–755.)  In so holding, however, the court did not indicate the phrase "common law tort actions" necessarily referenced a common law fraudulent transfer claim—as Berger's counsel suggested at oral argument—but likely referenced its prior statement that "Principles of law and equity, including estoppel, fraud, misrepresentation 'or other validating or invalidating cause,' are available to supplement an action under UFTA."  (*Id.* at p. 755.)  The court also did not determine whether the settlement amount allocated toward Dubois's spouse's liability was for the compensatory, consequential, or punitive damages prayed for in that action.  Nor did it otherwise address common law fraudulent transfer claims or whether consequential damages are recoverable for such claims.

plaintiff did *not* claim any financial injury caused by the allegedly fraudulent conveyance. (*Ibid.*)

Similarly, in *Kelleher v. Kelleher* (N.D.Cal. Sept. 29, 2015, No. 13-cv-05450-MEJ) 2015 WL 5693726 (*Kelleher*), the plaintiff brought a fraudulent transfer claim and sought to recover monetary damages against a transferee, who temporarily held assets received from the plaintiff's ex-husband but returned them prior to the plaintiff's lawsuit. (*Id.* at pp. *1–*2.) The defendant transferee argued the plaintiff suffered " 'no conceivable injury' " because the liquidated shares were fully reconveyed back to her ex-husband. (*Id.* at p. *3.) In response, the plaintiff argued in part " 'it would frustrate the purposes of the fraudulent transfer laws if a debtor and [a] sympathetic transferee could continually play a "shell game" of the debtor transferring assets out of the reach of creditors on a temporary basis to the transferee until the debtor can evade his creditors and reach a place of temporary safety, whereupon the transferee then reconveys the assets to the debtor, and then the process starts anew when the debtor is located.' " (*Id.* at p. *11.) While sympathetic to the plaintiff's position, the court concluded it was inappropriate to impose such a remedy because the plaintiff "has not shown she was injured. . . . Plaintiff has in effect been restored to her original position, and *she has not otherwise indicated how she suffered an injury that entitles her to a remedy beyond what has already occurred*. . . . As Defendant effectively voided the transfer himself, and *Plaintiff has not indicated that she suffered any other injury entitling her to relief*, Plaintiff has not shown how her fraudulent transfer claims provide her with a remedy." (*Ibid.*, italics added; see also *Renda v. Nevarez* (2014) 223 Cal.App.4th 1231, 1239, quoting *Miller v. Kaiser* (1967) 164 Colo. 206 [433 P.2d 772, 775] [" 'It becomes axiomatic therefore after analyzing this equitable remedy that a judgment creditor cannot in a fraudulent conveyance action be the recipient, as against the fraudulent transferor, of a money judgment, for the very basis of this action is the judgment debt he is endeavoring to collect. *A different situation might be presented in an action in which special damages were alleged and proved*.' " (italics from *Renda* omitted; italics added)].)

Another useful comparison is *Maxwell v. Fire Ins. Exchange* (1998) 60 Cal.App.4th 1446 (*Maxwell*).  There, the plaintiff filed suit against the defendant insurance company seeking damages for breach of contract and bad faith based on withholding amounts due under a judgment.  (*Id.* at p. 1448.)  A few months thereafter, the insurance companies paid the judgment including accrued interest.  (*Ibid.*)  The trial court subsequently granted the insurance companies' motions for summary judgment on the basis that the plaintiff "proffered no proof of financial loss other than an alleged delay in the payment of the judgment and the loss of use of the withheld judgment money as a result, thereby omitting the 'damages' element of his causes of action for breach of contract and bad faith and raising no triable issue of fact."  (*Ibid.*)  The Court of Appeal affirmed.  (*Id.* at p. 1452.)  It noted "no evidence was produced by the appellant to establish economic loss other than his argument that a delay in payment of the sum due from the judgment and its 'loss of use' was per se an economic loss which he suffered."  (*Id.* at p. 1450.)  Specifically, the court explained "appellant does not assert any damages other than emotional distress," "sworn testimony establishes that appellant's credit was not damaged from the delay in payment," and "appellant's attorney's fees and costs were contingent."  (*Id.* at pp. 1449–1450.)

Unlike the plaintiffs in *Mehrtash*, *Kelleher*, and *Maxwell*, Berger has alleged specific, financial injury caused by the Varum defendants' alleged fraudulent transfer, including various fees and penalties, damage to his credit, and lost rental income.[7]  There may be a valid argument as to whether these claimed damages are too speculative or were, in fact, part of the original judgment.  However, we do not decide on demurrer whether plaintiffs will be able to prove their claims, but only whether they are properly pleaded.  (*Desai v. Farmers Ins. Exchange* (1996) 47 Cal.App.4th 1110, 1115.)  The

---

[7] Because consequential damages may be recoverable for Berger's fraudulent transfer cause of action, there potentially could be an award upon which to assess punitive damages.  (*Cheung v. Daley* (1995) 35 Cal.App.4th 1673, 1677 ["an award of exemplary damages must be accompanied by an award of compensatory damages"].)  Accordingly, Berger is equally entitled to seek a punitive damage award at this stage.

amount of damages is generally a question of fact. (*Westphal v. Wal-Mart Stores, Inc.* (1998) 68 Cal.App.4th 1071, 1078.) Berger's allegations do not support a conclusion that—should he plead and prove his case—damages are unrecoverable.[8]

### 3. Consequential and Punitive Damages Are Not Barred by the Enforcement of Judgments Law

Defendants next argue the provision for postjudgment interest under the Enforcement of Judgments Law (EJL; Code Civ. Proc., § 680.010) is the sole remedy available for any delay in collecting on a judgment. We disagree.

The EJL provides for "the reasonable and necessary costs of enforcing a judgment," including postjudgment interest on unsatisfied money judgments. (Code of Civ. Proc., § 685.040; *Conservatorship of McQueen* (2014) 59 Cal.4th 602, 607.) Postjudgment interest generally runs from the date judgment is originally entered, and its purpose "is to compensate the judgment creditor for the time value of the money until the judgment is paid." (Code Civ. Proc., § 685.020, subd. (a); *Hernandez v. Siegel* (2014) 230 Cal.App.4th 165, 175.) While postjudgment interest provides the remedy for a judgment creditor who faces a delay in collecting a judgment, it has no bearing on the damages a plaintiff may seek in connection with postjudgment tortious conduct. Indeed, the EJL is entirely silent on this issue.

Defendants' reliance on *California Fed. Savings & Loan Assn. v. City of Los Angeles* (1995) 11 Cal.4th 342 and *Gray1 CPB, LLC v. SCC Acquisitions, Inc.* (2015)

---

[8] The Varum defendants cite *Forum Ins. Co. v. Devere Ltd.* (C.D.Cal. 2001) 151 F.Supp.2d 1145, to argue such damages are not recoverable. But that case does not provide us with any meaningful guidance. In *Forum*, the court did not assess what remedies arose from a common law fraudulent transfer claim. Rather, the question posed was what remedies the plaintiffs could seek for a common law conspiracy claim based on an UFTA violation. (*Forum*, at p. 1148.) The court concluded, "Terms such as 'liability' and 'damages' do not appear in the statute. [Citation.] Thus, by its terms, UFTA allows only equitable remedies such as avoidance, attachment, an injunction, or appointment of a receiver. Upon finding a UFTA violation, the court may cancel the transfer or impose a lien against the transferred property, but it may not award damages." (*Ibid.*) It further concluded, "A conspiracy claim does not expand the remedies afforded by UFTA." (*Ibid.*)

233 Cal.App.4th 882 does not compel us to find otherwise. In *California Fed. Savings & Loan Assn. v. City of Los Angeles*, the court addressed the proper interest rate applicable to local public entities. (*Id.* at p. 347.) In rejecting the plaintiffs' argument that postjudgment interest was unrelated to enforcing judgments, the court briefly commented such interest "reduces the incentive to delay payment" and "serves to adequately compensate plaintiffs." (*Id.* at p. 350.) It did not address whether such an interest award precluded subsequent damages for tortious conduct undertaken to avoid paying the outstanding judgment. Likewise, in *Gray1 CPB, LLC v. SCC Acquisitions, Inc.*, *supra*, 233 Cal.App.4th at page 891, the court addressed whether the plaintiff made a timely motion for attorney fees incurred in attempting to enforce its judgment. The case did not discuss what, if any, additional damages the plaintiff may recover as a result of the defendant's alleged fraudulent transfers, whether the plaintiff incurred or sought such damages, or whether the postjudgment interest precluded such damages.

Nothing in the EJL expressly precludes Berger from seeking damages arising from alleged postjudgment tortious conduct. Nor are we willing to imply such a limitation. Accordingly, the EJL does not impact Berger's ability to seek damages arising from the allegations in his complaint.

### 4. As Alleged in the Operative Complaint, the Damages at Issue Do Not Constitute a Double Recovery

Finally, defendants rely on *Renda v. Nevarez*, *supra*, 223 Cal.App.4th 1231 to contend the damages sought by Berger would amount to an impermissible double recovery. In *Renda*, the court denied recovery of money damages from the debtor in a fraudulent transfer action because it "would partially duplicate the money judgment he had already obtained against [the defendant] in the prior action, in violation of the rule prohibiting double recovery for the same harm." (*Id.* at pp. 1236–1237.) In other words, a creditor cannot obtain a money judgment against a debtor for the amount of the outstanding judgment because it would create two judgments against the same debtor for the same debt. Here, however, Berger is not attempting to obtain a duplicate recovery of

11

the underlying judgment, but pursue separate monetary damages he alleges were caused by the Varum defendants' postjudgment tortious conduct.

Defendants also contend the damages are duplicative because they encompass damages caused by the construction defect claims, which were included in the in the prior action's judgment. At demurrer, however, we cannot conclude the requested damages are duplicative. The complaint alleges the damages sought in the instant matter were caused by defendants' "efforts to hinder, delay and defraud [Berger] from collecting the Judgment" and the resulting delay in satisfaction of judgment. We must accept these allegations as true for purposes of defendants' demurrer. (*Brown*, *supra*, 247 Cal.App.4th at p. 279.)

## B. *Conspiracy Claim*

California imposes liability " ' "on one who aids and abets the commission of an intentional tort if the person (a) knows the other's conduct constitutes a breach of duty and gives substantial assistance or encouragement to the other to so act or (b) gives substantial assistance to the other in accomplishing a tortious result and the person's own conduct, separately considered, constitutes a breach of duty to the third person." ' " (*Casey v. U.S. Bank Nat. Assn*. (2005) 127 Cal.App.4th 1138, 1144; accord *American Master Lease LLC v. Idanta Partners, Ltd*. (2014) 225 Cal.App.4th 1451, 1477 [individual may be liable for aiding and abetting an intentional tort where he or she "makes ' "a conscious decision to participate in tortious activity for the purpose of assisting another in performing a wrongful act" ' "].) Because transferring funds in order to evade creditors constitutes an intentional tort, it logically follows that California common law should recognize liability for aiding and abetting a fraudulent transfer. (See *Filip v. Bucurenciu*, *supra*, 129 Cal.App.4th at p. 837 ["In fraudulently transferring property, tortious conduct occurred."]; *Taylor v. S & M Lamp Co*. (1961) 190 Cal.App.2d 700, 705 ["the second cause of action alleges, in essence, the commission of a tort by the judgment debtors, to wit, a concealment of their assets for the purpose of defrauding their principal creditor"].)

In *Taylor v. S & M Lamp Co.*, *supra*, 190 Cal.App.2d 700, for example, this District held the plaintiff adequately stated a cause of action for conspiracy to commit a fraudulent transfer. (*Id.* at p. 706.) The court reasoned " '[c]ivil liability for conspiracy to commit a tort has long been recognized in this state,' " and pursuant to UVTA it "is contrary to public policy for a debtor to convey or to conceal his property for the purpose of defrauding his creditors." (*Ibid.*) The court thus concluded, "a debtor and those who conspire with him to conceal his assets for the purpose of defrauding creditors are guilty of committing a tort and each is liable in damages." (*Ibid.*; see also *Monastra v. Konica Business Machines, U.S.A., Inc.* (1996) 43 Cal.App.4th 1628, 1644–1645 [person other than the debtor or transferee who conspires with others to effect a fraudulent transfer may be held jointly liable for the creditor's damages].)

Here, Berger alleges the defendants were aware the Varum defendants planned to fraudulently transfer assets to hinder, delay, or defraud Berger. Berger further alleges the defendants "agreed and intended that the fraudulent transfers be committed," the defendants in fact "received assets without adequate consideration in furtherance of the fraud upon [Berger]," and Berger was harmed as a result of such conduct. These allegations are sufficient to state a cause of action for conspiracy. (See *Casey v. U.S. Bank Nat. Assn.*, *supra*, 127 Cal.App.4th at p. 1144.)

## III. DISPOSITION

The order sustaining the demurrer and the judgment dismissing Arkady Berger's second amended complaint is reversed, and the action is remanded to the trial court for further proceedings. Berger may recover his costs on appeal. (Cal. Rules of Court, rule 8.278(a)(1), (2).)

13

_____

Margulies, J.



We concur:


_____

Humes, P. J.



_____

Banke, J.




A150629
*Berger v. Varum*


14

Trial Court: San Francisco County Superior Court

Trial Judge: Hon. Harold Kahn

Counsel:

Law Office of Paul J. Katz and Paul J. Katz for Plaintiff and Appellant.

Severson & Werson, David A. Ericksen and Adam Polakoff for Defendant and Respondent.