Filed 2/21/25  Rafalian v. Elyaszadeh CA2/4

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

|  |  |
|---|---|
| BEHNAM DANIEL RAFALIAN, Plaintiff and Appellant, v. SHAHRAM ELYASZADEH et al., Defendants and Respondents. | B331911 (Los Angeles County  Super. Ct. No. 21SMCP00018) |

APPEAL from a judgment of the Superior Court of Los Angeles County, Elaine W. Mandel, Judge.  Affirmed.

Jacob N. Segura for Plaintiff and Appellant.

The Leichter Frim, Andrew E. Hewitt and Kevin J. Leichter for Defendant and Respondent Michael L. Magasinn.

Affeld Grivakes, Brian R. England and David W. Affeld for Defendants and Respondents Shahram Elyaszadeh, E&E Mortgage Bankers Corp., E.L.Y. Mortgage Bankers Corp., 26 Malibu, L.L.C., E&B Funding Group, LLC, PCH USA 26, LLC, Yona Samih, Yona Investment Group, LLC, Lion Solar, LLC, Nice Team, LLC, Sunrise Financial, LLC, Agoura Hills Financial, LLC, and Stonehaven, LLC.

**INTRODUCTION**

Appellant Behnam Daniel Rafalian (Rafalian) purchased three outstanding judgments against respondent Shahram Elyaszadeh (Elyaszadeh). Rafalian pursued collection efforts in the cases in which the judgments had been issued. He also filed a new lawsuit against Elyaszadeh and his wife, respondent Yona Samih (Samih), seeking to collect the judgments and void various financial transfers made by Elyaszadeh and Samih.

Pursuant to a court order, Elyaszadeh and Samih satisfied the judgments. They then moved for judgment on the pleadings in the new lawsuit, arguing that Rafalian now had nothing to collect and no damages from the transfers. The trial court granted their motions and entered judgment of dismissal. We affirm.

**FACTS AND PROCEDURAL BACKGROUND**

I.     *Underlying Judgments*

On October 27, 2010, East West Bank obtained a judgment against Elyaszadeh for $639,476.80. On January 16, 2013, Parichehr C. Kashani, acting as Trustee of the Kashani Family Trust, obtained a judgment against Elyaszadeh for $713,010 (Kashani Judgment). On December 3, 2018, the law firm Friedman + Taitelman, LLP obtained a judgment against Elyaszadeh for $130,917.96. Between September 14, 2020 and October 16, 2020, Rafalian bought each of these judgments.

II.     *Disputed Funds*

Rafalian believed Elyaszadeh owned a portion of a company called Great American Chicken Corp., Inc. (Great American Chicken), but that in

2

2013 both Elyaszadeh's business partner Shaoul J. Levy (Levy) and Samih had taken formal title to Elyaszadeh's shares and were holding them for Elyaszadeh's benefit. According to Rafalian, Great American Chicken was purchased in September 2020 for $86 million and Elyaszadeh stood to receive a sizable portion of that price. Rafalian wanted an order that Elyaszadeh's portion be turned over to satisfy the three judgments.

III.    *Enforcement Efforts*

A.    *Original Case*

Rafalian first sought an order sequestering the funds in the case in which the Kashani Judgment had originally been entered. That case was assigned to Judge Mark Young. In October 2020, Judge Young ordered Levy and Samih not to disburse to Elyaszadeh any funds received from the sale of Great American Chicken.

B.    *New Lawsuit*

On January 26, 2021, Rafalian filed a new complaint alleging causes of action for creditor's suit, statutory and common law fraudulent transfer, and constructive trust against Elyaszadeh and entities affiliated with him,[1] Samih and entities affiliated with her,[2] Levy, Great American Chicken, Levy

---

[1]    E&E Mortgage Bankers Corp., E.L.Y. Mortgage Bankers Corp., 26 Malibu, LLC, E&B Funding Group, LLC, and PCH USA 26, LLC. None of the briefs provide separate discussion of these entities, though they are parties to this appeal. Any discussion that applies to Elyaszadeh applies equally to his entities.

[2]    Sunrise Financial, LLC, Nice Team, LLC, Lion Solar, LLC, Yona Investment Group, LLC, Agoura Hills Financial, LLC, and Stonehaven, LLC. None of the briefs provide separate discussion of these entities, though they

Affiliated Holdings, Inc. (collectively Levy Entities), various other defendants,[3] and DOES 1-100. The complaint described the sale of Great American Chicken and sought damages for the alleged concealment of Elyaszadeh's ownership interest in Great American Chicken. It also sought an order to match Judge Young's, that the sale proceeds be held to satisfy the judgments. This new case was assigned to Judge Elaine W. Mandel.

In February 2021 Rafalian executed a stipulation with the Levy Entities, allowing the Levy Entities to forego filing an answer and avoid any damages award, so long as they held certain funds available to satisfy the underlying judgments if the court so ordered. Rafalian also amended the complaint to substitute three new defendants in lieu of Does 1-3: Shahram Ravaie, David Azizi, and respondent Michael L. Magasinn (Magasinn), all individually and as trustees of the Shamsam Irrevocable Trust.[4]

In August 2021, Elyaszadeh and Samih answered the complaint.

---

are parties to this appeal. Any discussion that applies to Samih applies equally to her entities.

[3] Restaurant Brands New Zealand Limited, RBD California Restaurants Limited, First Republic Bank, Hamlin Investment 26, LLC, Maui 26, LLC, Vernon Wall, LLC, and Edward M. Mazzarino. Rafalian subsequently dismissed Restaurant Brands New Zealand Limited, RBD California Restaurants Limited, and First Republic Bank, without prejudice. None of the remaining defendants are parties to this appeal.

[4] Shahram Ravaie and David Azizi were subsequently dismissed without prejudice and are not parties to this appeal. After this appeal was filed, respondent Mehrdad Ebrahimpour was substituted in place of Magasinn as trustee of the Shamsam Irrevocable Trust. Magasinn remains a party to this appeal in his individual capacity.

4

C.    *Satisfaction of the Judgments*

In September 2021, Judge Young ordered Levy to transfer some of the proceeds from the sale of Great American Chicken to satisfy the three judgments.  In October 2021, Judge Young found all three judgments satisfied.  No appeal was taken from these rulings.

IV.    *Subsequent Proceedings*

In May 2022, Samih filed a motion for judgment on the pleadings in the new action, arguing Rafalian could no longer pursue his case because the underlying judgments had been satisfied, he had not pled any consequential damages resulting from the previous failure to pay the judgment, and his causes of action were barred by the statute of limitations.  At the same time, Magasinn filed his own motion for judgment on the pleadings, making those arguments and adding two others: that no specific facts were pled against him in the complaint, and that Rafalian's voluntary dismissal of other, similarly situated defendants necessarily applied to him as well.

Judge Mandel granted these motions without leave to amend, finding that satisfaction of the judgments deprived Rafalian of standing to bring the claim for creditor's suit, the claim for constructive trust, and the statutory claim for fraudulent transfer.  As to the common law claim for fraudulent transfer, Judge Mandel found Rafalian failed to properly plead consequential damages arising from the transfer and the statute of limitations barred his recovery in any event.

In July 2022, Elyaszadeh made his own motion for judgment on the pleadings.  In August 2022, Judge Mandel granted that motion with leave to amend.  Rafalian filed a first amended complaint, asserting causes of action

for statutory and common law fraudulent transfer, constructive trust, and civil harassment.

In September 2022, Elyaszadeh and his entities again moved for judgment on the pleadings, arguing Rafalian could no longer pursue his statutory claim for fraudulent transfer because the underlying judgments had been satisfied, he could not pursue his common law claim for fraudulent transfer because he still had not alleged consequential damages, he could not pursue his constructive trust claim because the underlying judgments had been satisfied and because constructive trust is a remedy rather than a cause of action, and the harassment claim was not within the scope of the court's grant of leave to amend. Judge Mandel granted the motion without leave to amend, finding as before that satisfaction of the judgments deprived Rafalian of standing to bring the statutory claim for fraudulent transfer and the claim for constructive trust, and he had failed to properly allege consequential damages connected to the common law claim for fraudulent transfer. Judge Mandel also ruled that the addition of the civil harassment claim was not authorized by her previous order granting leave to amend.

On May 25, 2023, Judge Mandel entered judgment of dismissal as to the entire action. Rafalian timely appealed.

## DISCUSSION

Rafalian argues the trial court improperly disregarded his allegations concerning Elyaszadeh's ownership interest in Great American Chicken, his statutory claim for fraudulent transfer remains viable after satisfaction of the judgments, neither claim for fraudulent transfer is barred by the statute of limitations, his damages are properly alleged, and the trial court abused its discretion by not granting leave to amend. We conclude Rafalian has

6

forfeited his argument in support of the statutory claim for fraudulent transfer. We further conclude Rafalian failed to properly plead, or explain how he could plead, consequential damages in support of his common law claim for fraudulent transfer. Therefore, we need not discuss either Elyaszadeh's ownership interest in Great American Chicken or the statutes of limitations, and we affirm the judgment.

### I. *Standard of Review*

"The standard of review for a motion for judgment on the pleadings is the same as that for a general demurrer: We treat the pleadings as admitting all of the material facts properly pleaded, but not any contentions, deductions or conclusions of fact or law contained therein. We may also consider matters subject to judicial notice. We review the complaint de novo to determine whether it alleges facts sufficient to state a cause of action under any theory." (*Dunn v. County of Santa Barbara* (2006) 135 Cal.App.4th 1281, 1298.)

We review the trial court's decision, not its reasoning. (*Mendoza v. Town of Ross* (2005) 128 Cal.App.4th 625, 631.) If the motion was granted without leave to amend, appellant bears the burden of showing the defect could be cured via amendment. (*T.H. v. Novartis Pharmaceuticals Corp.* (2017) 4 Cal.5th 145, 162 (*T.H.*).)

### II. *Samih and Magasinn*

Samih and Magasinn obtained dismissal from the initial complaint, which contained claims for creditor's suit, statutory and common law fraudulent transfer, and constructive trust. Rafalian argues the fraudulent

transfer claims should have been permitted to proceed.[5]  However, as the trial court's ruling notes, Rafalian's opposition papers did not specifically address the statutory claim.  And at the hearing on Samih and Magasinn's motions, Rafalian's counsel expressly conceded the statutory claim was no longer viable.  Therefore, Rafalian has forfeited any argument related to that claim.  (*Doe WHBE 3 v. Uber Technologies, Inc.* (2024) 102 Cal.App.5th 1135, 1152 (*Uber Technologies*).)  We consider only the common law cause of action.

### A.    *Common Law Fraudulent Transfer*

"Traditionally, creditors could bring fraudulent transfer cases under common law."  (*Berger v. Varum* (2019) 35 Cal.App.5th 1013, 1019 (*Berger*).)  To establish a cause of action for fraudulent transfer under common law, plaintiff must plead damages resulting from the transfer.  (*Id.* at p. 1020.)

*Berger* illustrates how such a cause of action may arise.  There, plaintiff obtained a judgment for $2.7 million against defendants, which defendants appealed; however, they did not post a bond, and the judgment therefore became immediately enforceable.  (*Berger, supra,* 35 Cal.App.5th at p. 1017.)  Plaintiff filed a new, separate lawsuit to enforce it, which included allegations of fraudulent transfer.  (*Ibid.*)  The original judgment was affirmed on appeal, and defendants paid it seven months later.  (*Ibid.*)

The plaintiff in *Berger* then amended his complaint in the new lawsuit, alleging a statutory claim for fraudulent transfer.  (*Berger, supra,* 35 Cal.App.5th at p. 1017.)  Defendants successfully demurred, arguing the

---

[5]    Rafalian does not offer any specific or developed discussion of the causes of action for creditor's suit or constructive trust.  Therefore, he has forfeited those claims.  (See *Meridian Financial Services, Inc. v. Phan* (2021) 67 Cal.App.5th 657, 701, fn. 15.)

satisfaction of the judgment eliminated any damages. (*Id.* at p. 1018.) The panel reversed, concluding that plaintiff should be permitted to amend and assert a common law claim for fraudulent transfer based on his allegations that the delay in payment had caused a long list of financial complications for him.[6] (*Id.* at pp. 1020, 1023.)

Here, the complaint asserted a cause of action for common law fraudulent transfer, and Rafalian relied on *Berger,* but the complaint did not sufficiently identify what damages Rafalian suffered. It alleged Rafalian incurred attorney's fees to enforce the judgment, lost unspecified business opportunities, and suffered emotional distress. For the reasons given below, none of these allegations is sufficient to support the claim.[7]

B.  *Attorney's Fees*

Attorney's fees incurred to enforce a judgment, even if incurred in a separate action for creditor's suit or fraudulent transfer, must be claimed in a motion made before the judgment has been satisfied. (*Conservatorship of McQueen* (2014) 59 Cal.4th 602, 605; see also *Gray1 CPB, LLC v. SCC Acquisitions, Inc.* (2015) 233 Cal.App.4th 882, 886–887, 891.) The purpose of this requirement is to achieve finality and avoid a situation where full

---

[6]  "Berger has alleged a range of damages stemming from defendants' conduct. These include items such as liens and interest on those liens, lost rents, early IRA redemptions and related penalties and taxes, losses due to diminished credit scores and credit, increased financing fees, foreclosure fees, emotional distress, exemplary damages, and costs." (*Berger, supra,* 35 Cal.App.5th at p. 1020.)

[7]  The absence of any actual damages necessarily eliminates Rafalian's claim for punitive damages. (See *Berger, supra,* 35 Cal.App.5th at p. 1023, fn. 7.)

payment of a debt merely results in an additional bill. (*Conservatorship of McQueen, supra,* 59 Cal.4th at pp. 615–616.) Nowhere does *Berger* authorize the recovery of attorney's fees as damages, and Rafalian cites no other case that does so in this context. Any rights Rafalian had to recover attorney's fees ended when the judgments were satisfied.

### C. *Lost Business Opportunities*

Rafalian broadly alleged "loss of business opportunities that had to be deferred or abandoned." This allegation is wholly conclusory and violates the rule that every element of a fraud claim must be pled with specificity. (*Moncada v. West Coast Quartz Corp.* (2013) 221 Cal.App.4th 768, 776 (*Moncada*).) Rafalian offered no further description of these lost business opportunities, either elsewhere in the complaint or in his opposition papers. There was no indication of what sort of business Rafalian lost, or who his prospective partners were. In response to the court's question about damages at the hearing, Rafalian's counsel offered only the general assertion that his client "had to b[o]rrow money to meet obligations." As counsel for Elyaszadeh pointed out, this differed from the original pleading and was still insufficiently specific.[8]

On appeal, Rafalian argues that whether he has alleged damages with sufficient specificity "presents a question of fact" which the trial court cannot decide on demurrer. He quotes *Berger*, but the quoted language does not support his position; it simply indicates that the precise dollar amount of damages is a question of fact. (*Berger, supra,* 35 Cal.App.5th at p. 1023 ["The amount of damages is generally a question of fact"].) The court is not obliged

---

[8]     Rafalian made no further attempt to describe his damages during the hearing.

to accept conclusory pleading when ruling on a demurrer.  (*Southern California Gas Leak Cases* (2019) 7 Cal.5th 391, 395.)  Therefore, the court may decide at that stage whether pleading is conclusory.  Here, it was.

### D.     *Emotional Distress*

The complaint also claimed emotional distress damages.  However, Rafalian is not the original judgment creditor, nor was he the creditor when the alleged fraudulent transfers occurred in 2013.  He bought the three judgments in the fall of 2020, at least seven years later, and mere days before Judge Young ordered Levy to hold the funds ultimately used to satisfy them.  Prior to the assignments, Rafalian was a stranger to these actions; his present rights flow from the assignments, and emotional distress claims cannot be assigned.  (*Murphy v. Allstate Ins. Co.* (1976) 17 Cal.3d 937, 942 (*Murphy*).)

Rafalian cites no authority for the proposition that a person who becomes a judgment creditor by assignment may seek emotional distress damages in connection with an event that occurred before the assignment.  Such potential damages are, or should be, accounted for in the negotiations which lead to the assignment.  (See *Essex Ins. Co. v. Five Star Dye House, Inc.* (2006) 38 Cal.4th 1252, 1261–1262 (*Essex*), citing *Murphy, supra,* 17 Cal.3d at pp. 946–947.)  Rafalian might have recovered economic losses stemming from the fraudulent transfer, had they been properly alleged.  (See *Essex, supra,* 38 Cal.4th at pp. 1263–1264.)  But emotional distress damages are not available to him.

III.   *Elyaszadeh*

Elyaszadeh obtained dismissal from the first amended complaint, which contained claims for statutory and common law fraudulent transfer, constructive trust, and civil harassment.  Again, Rafalian has forfeited the statutory claim for fraudulent transfer as well as his claim for constructive trust, because the statutory claim for fraudulent transfer was not argued before the trial court, and the constructive trust claim has not been discussed on appeal.  (*Uber Technologies, supra,* 102 Cal.App.5th at p. 1152; *Meridian Financial Services, Inc. v. Phan* (2021) 67 Cal.App.5th 657, 701, fn. 15 (*Meridian*).)  Rafalian has likewise forfeited the civil harassment claim by failing to offer any developed argument regarding that claim on appeal.  (*Meridian, supra,* 67 Cal.App.5th at p. 701, fn. 15.)  Therefore, we again discuss only the common law cause of action for fraudulent transfer.

The first amended complaint expanded the economic damages allegations without making them more specific.[9]  It alleged damages "arising from Rafalian's diminished credit scores and credit," "arising from increased loan interest on personal loans taken out of [*sic*] Rafalian, and increased credit card charges which would not have been incurred," as well as "for loss of business opportunities . . . which forced Rafalian to take in business associates and partners to fund real estate transactions which . . . Rafalian would have been able to fund and close on his own."

None of the allegations identify any specific loans on which the interest changed or the fees were increased.  Nor do they identify any specific business deals Rafalian had to restructure to account for lack of funds.

---

[9]    The first amended complaint also contained expanded allegations of emotional distress and attorney's fees incurred in enforcing the judgments. For the reasons already given, Rafalian cannot recover those damages.

Rafalian added no details in his opposition to Elyaszadeh's motion. When counsel for Elyaszadeh pressed the point at the hearing, Rafalian did not respond with any further details. Nor do any such details appear in Rafalian's briefing on appeal. The allegations remained insufficient, and the trial court correctly held that Rafalian had not sufficiently pled damages. (See *Moncada, supra,* 221 Cal.App.4th at p. 776.)

## IV.    *Leave to Amend*

To the extent Rafalian requested leave to amend in the trial court, the requests lacked substance. The same is true on appeal. Rafalian's opening brief offers a handful of conclusory comments, without any description of what new information a second amended complaint would contain. His reply brief simply repeats those comments, verbatim. Rafalian has not carried his burden to demonstrate how his pleadings could be cured by amendment. (*T.H., supra,* 4 Cal.5th at p. 162.)

## V.    *Conclusion*

There were three outstanding judgments against Elyaszadeh. Rafalian bought the right to collect on those judgments. He did so. Rafalian has no further rights to enforce.

Rafalian correctly observes that a fraudulent transfer is a separate wrong, and an action to recover consequential damages from that transfer may survive satisfaction of the judgment. (*Berger, supra,* 35 Cal.App.5th at pp. 1024–1025.) But this requires Rafalian to specifically identify those

consequential damages.  Rafalian did not do so.  Therefore, Elyaszadeh, Samih, and Magasinn were entitled to judgment on the pleadings.[10]

## DISPOSITION

The judgment of the trial court is affirmed.  Respondents shall recover their costs on appeal.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

ZUKIN, Acting P. J.

WE CONCUR:

COLLINS, J.

DAUM, J.*

---

[10]    Elyaszadeh and Samih ask this court to find that they are entitled to an award of attorney's fees on appeal based on the underlying judgments and Civil Code section 1717.  We decline to do so.  While we award costs on appeal pursuant to California Rules of Court, rule 8.278, there was no attorney's fee award at issue here, and we express no opinion on whether such an award would be proper.  California Rules of Court, rule 8.278(d)(2) secures the right of either party to seek attorney's fees on appeal by filing a compliant motion in the trial court.

*Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article IV, section 6 of the California Constitution.