Filed 1/15/25; Certified for partial publication 2/10/25 (order attached)

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| OPTRONIC TECHNOLOGIES, INC., <br><br> Plaintiff and Appellant, <br><br> v. <br><br> CELESTRON ACQUISITION, LLC, <br><br> Defendant and Respondent. | B330798 <br><br> (Los Angeles County Super. Ct. No.22STCV35723) |

APPEAL from a judgment of the Superior Court of Los Angeles County, Richard L. Fruin, Jr., Judge.  Reversed and remanded with instructions.

BraunHagey & Borden, J. Noah Hagey, Matthew Borden, and Kory DeClark for Plaintiff and Appellant.

FROST, Christopher Frost, Joshua S. Stambaugh and Nicholas Lauber for Defendant and Respondent.

# INTRODUCTION

In a previous litigation, appellant Optronic Technologies, Inc. d/b/a Orion Telescopes & Binoculars (Orion) sued Chinese company Ningbo Sunny Electronic Co., Ltd. in federal court in an antitrust action. The federal court entered a judgment in favor of Orion for over $50 million.

In a separate lawsuit that is the basis for this appeal, Orion sued Celestron Acquisition, LLC for fraudulent transfer under the Uniform Voidable Transactions Act (UVTA) (Civil Code, § 3439 et seq.[1]), and tortious interference with prospective economic advantage. Orion alleged that after the federal court entered judgment against Ningbo Sunny, but before Orion was permitted to collect on the judgment, Celestron and Ningbo Sunny arranged to have Celestron pay an approximately $4.2 million debt to Ningbo Sunny that was not yet due. By doing so, Celestron undermined Orion's ability to collect on its judgment by eliminating a significant accounts receivable asset, and by sending the funds to China, effectively putting them out of Orion's reach.

Celestron demurred to Orion's complaint, and the trial court sustained the demurrer without leave to amend. Orion appealed. We reverse in part. Although Orion did not demonstrate that Celestron is a debtor or a transfer beneficiary under the UVTA, the facts alleged in Orion's complaint were sufficient to state a cause of action for conspiracy or aiding and abetting a fraudulent transfer. We therefore find that the demurrer to the fraudulent transfer cause of action should have been overruled. We agree with Celestron and the trial court,

---

[1] All undesignated section references are to the Civil Code.

however, that Orion failed to state a viable cause of action for tortious interference with prospective economic advantage.

Orion also contends the trial court erred in failing to rule on Celestron's special motion to strike under the anti-SLAPP statute, Code of Civil Procedure section 425.16.[2]  Orion asks us to consider the merits of the anti-SLAPP motion in the first instance, find the motion frivolous, and award Orion attorney fees.  However, Orion has not demonstrated that the trial court erred in finding that the motion had been withdrawn by stipulation of both parties.  We therefore do not address the merits of the anti-SLAPP motion.

### FACTUAL AND PROCEDURAL BACKGROUND

### A.    Antitrust litigation

Orion, a company based in California, states that it "sells telescopes, binoculars, and accessories online, through a network of dealers, and through its catalog."  Celestron is "is the largest importer and seller of telescopes in the United States and abroad."  Ningbo Sunny is a Chinese telescope manufacturer; its U.S. subsidiaries are Sunny Optics, Inc. and Meade Instruments Inc.

On November 1, 2016, Orion filed a federal antitrust action against Ningbo Sunny, Sunny Optics, and Meade.[3]  Orion alleged

---

[2]      "SLAPP" stands for "strategic lawsuits against public participation."  (*FilmOn.com Inc. v. DoubleVerify Inc.* (2019) 7 Cal.5th 133, 139.)

[3]      In this court, Orion filed a motion for judicial notice of the federal antitrust complaint and three additional documents from the federal case.  We take judicial notice of the antitrust complaint filed on November 1, 2016 (exhibit 2 to Orion's motion), as the trial court did.  (Evid. Code, § 459, subd. (a).)  It is not

3

that these defendants "colluded and conspired with third party telescope manufacturers in China to fix prices, control and restrict output, and divide the $200 million market for manufacturing and distribution of recreational telescopes and components sold in the U.S."

In its antitrust complaint, Orion alleged there were unnamed "settling parties" who had "participated as partners in the conduct alleged herein but have settled and resolved Orion's claims and are therefore not named as parties." According to Orion's opening brief in this appeal, these settling parties included Celestron and its corporate parent, Synta.

The case against Meade and Sunny Optics was stayed due to their bankruptcy filings. On November 26, 2019, a jury in the antitrust action found in favor of Orion. On December 5, 2019, the district court entered judgment "in favor of [Orion] against [Ningbo Sunny] as to Orion's claims for damages under Section 1 of the Sherman Act, Section 2 of the Sherman Act, Section 7 of the Clayton Act, and the California Cartwright Act, Cal. Bus. & Profs. Code § 16600, et seq." The $54,000,000 judgment included treble damages. Under federal law, Orion could not enforce the judgment for 30 days; the stay would expire on January 5, 2020. (Fed. R. Civ. Proc. 62(a).)

After the jury announced its verdict but before judgment was entered, Orion moved for a restraining order barring Ningbo Sunny from removing assets, including accounts receivable, from

---

clear whether the other three documents were presented to the trial court, and they are not necessary to our determination of the issues herein. Judicial notice is therefore denied for exhibits 1, 3, and 4 to Orion's motion. (See *Arce v. Kaiser Foundation Health Plan, Inc.* (2010) 181 Cal.App.4th 471, 482.)

4

the United States.  Orion noted that Ningbo Sunny and the majority of its assets were in China.  Orion further alleged that Ningbo Sunny  had a "significant asset" in the United States in the form of accounts receivable, but "[t]hose funds . . . are currently in the hands of the entities that conspired with [Ningbo Sunny] to violate antitrust laws."  The district court set a briefing schedule, and held a hearing on December 5, 2019.  At the hearing, the district court repeatedly asked Ningbo Sunny's counsel whether Ningbo Sunny could provide assurance to Orion and the court that it would not frustrate enforcement of the judgment by transferring assets outside of the United States. Ningbo Sunny's counsel told the district court that he was "unaware of [a] judgment avoidance plan," and that Ningbo Sunny simply sought to continue operations "in the ordinary course of business."  The Court noted that "there's historical evidence of how you do business, your payments et cetera to offsite" recipients and, "As the case goes forward, if there's deviation in that," it would cause "a little concern."  The court also said, "[T]here's going to be great scrutiny on the books now. [¶] If there's deviation from the books, there's going to be some . . . explaining to do."  The district court took the matter under submission.

On December 10, 2019, Ningbo Sunny filed a declaration by its president, Wenjun "Peter" Ni, stating in part, "Ningbo will not transfer any of its cash or other assets located in the United States to a location outside of the United States other than in the ordinary course of business while post-trial motions and appeals remain pending."  The district court then denied Orion's application for a restraining order.

Meanwhile, Celestron had received inventory from Ningbo Sunny throughout 2019, and it owed Ningbo Sunny a "substantial" sum for that inventory. Celestron's payment terms with Ningbo Sunny were on a "net 100" basis, meaning that Celestron was required to pay for any inventory within 100 days of receiving the invoice for the inventory. On November 27, 2019, the day after the jury's verdict, Orion's counsel sent a letter to Celestron's counsel. The letter noted that Celestron held "significant amounts payable" to Ningbo Sunny. It stated, "In order to ensure that Orion is able to fully satisfy its impending judgment against [Ningbo Sunny], and to ensure that you do not aid and abet or otherwise assist those parties from fraudulently conveying assets outside of the United States," Celestron should not "not aid, assist, facilitate or otherwise cause the transfer of assets, cash, or other consideration to [Ningbo Sunny] to be made from the United States to outside of the United States."

On January 2, 2020, three days before the judgment execution stay was set to expire, Celestron paid Ningbo Sunny $4,184,057.70 for outstanding invoices.

On January 13, 2020, Orion served Celestron with a notice of levy under writ of execution. On January 17, 2020, the district court issued an order assigning to Orion all of Ningbo Sunny's accounts receivable from Celestron.

Orion discovered that Celestron made the January 2 payment. On February 13, 2020, Orion filed a motion in the district court seeking sanctions against Ningbo Sunny. Orion asserted that Ningbo Sunny "falsely represent[ed] to the [district court] under oath that [Ningbo Sunny] would not transfer any assets outside of the U.S. except in the ordinary course of business." Orion produced a remittance document showing that

the January 2, 2020 payment from Celestron to Ningbo Sunny included payment for invoices dated from early October to late December 2019. Orion noted that pursuant to the parties' net 100 payment terms, payment for invoices from October or later was due no earlier than mid-January 2020—much later than Celestron's January 2 payment. Orion also presented an email dated January 1, 2020 from Ningbo Sunny to Celestron, in which Ningbo Sunny asked Celestron to "pay as much payment as possible this week."[4]

The district court granted Orion's motion for sanctions on March 9, 2020. In a written ruling, the district court stated, "The evidence in this case strongly suggests that the transfer . . . was outside the ordinary course of business," because Ningbo Sunny requested payment from Celestron on January 1, 2020, and "most of the money paid was not yet due; rather Ningbo Sunny requested *early* payment." The court also stated, "The evidence indicates that the historical practice between Ningbo Sunny and Celestron did not include requests for full, early payment of all debts within a week of notice." The court concluded, "The Court finds that the totality of the circumstances and the evidence show that Ningbo Sunny made the Ni Declaration in bad faith." The court enjoined Ningbo Sunny from transferring assets outside the United States and issued an order with several requirements, including that Ningbo Sunny "pay Orion the $4,184,057 [it] received from Celestron."

---

[4] Discovery responses filed in district court on March 23, 2020 also showed that Ningbo Sunny's counsel and Celestron's counsel spoke on approximately January 1, 2020 about "Telescope supply continuity" and "judgment enforcement."

## B.    This litigation

### 1.    *Orion's complaint*

On November 10, 2022, Orion filed a complaint against Celestron.  Orion summarized relevant portions of the antitrust litigation, and asserted that Celestron and its counsel "were copied on all filings in the [antitrust] litigation, and were thus aware of Chairman Ni's representations to the Court."  It also alleged that on December 2, 2019—a few days before the December 5 restraining order hearing in district court—Ni emailed Ningbo Sunny's counsel "trying to find a way to circumvent the judgment.  He asked: 'is it possible that we ship to US customers through [a] third party in the future' to avoid having to pay Orion."  On December 4, 2019, Ningbo Sunny's counsel advised Ni that "[i]n terms of the [accounts receivable] . . . it would be in Ningbo Sunny's interest to collect as much as possible as soon as possible."  On December 5, 2019, at the restraining order hearing, a different attorney for Ningbo Sunny told the district court that "we are unaware" of any "judgment avoidance plan."

Orion further asserted that "[o]n New Year's Eve, [Celestron's] lawyer . . . sent an unsolicited email to Ningbo Sunny's lawyer . . . asking to set up an 'urgent' call. That conversation ensued on New Year's Day. The day after—three days before Orion could begin enforcing the Judgment—Celestron wired the funds to" Ningbo Sunny.

Orion alleged that in this transfer, "Ningbo Sunny's co-conspirator and largest customer, Celestron, paid Ningbo Sunny $4.2 million for invoices that were not yet due. The District Court found that this transfer was not in the ordinary course of business."  Orion stated that "Celestron was aware of Chairman

Ni's representations to the Court and chose to help its coconspirators with the fraud."

Orion alleged that "[p]ursuant to its agreement with Ningbo Sunny, Celestron made early payment of the accounts receivable to Ningbo Sunny outside the ordinary course of business, knowing that Ningbo Sunny had avoided an injunction that would have prevented such a transfer by making a fraudulent representation under oath to the District Court that it would not make such transfers." It stated, "Ningbo Sunny and [Celestron] attempted to hide this plot by creating a paper trail whereby Ningbo Sunny sent a written request for the payments [on January 1, 2020], which Celestron then purported to honor." Orion stated that Ningbo Sunny's January 1 email "was written to provide a purportedly legitimate basis for the Fraudulent Transfer. But as Ningbo Sunny's earlier discussions with [counsel] about avoiding the Judgment reveal, and as the District Court subsequently found, the Fraudulent Transfer was not in the ordinary course of business and was intended to frustrate Orion's ability to enforce the Judgment, contrary to their representations to the District Court." Orion alleged that "[w]ithout the Fraudulent Transfer, Orion would have collected the accounts receivable through post-Judgment collection procedures." Orion also alleged that despite the district court's sanction orders, neither Ningbo Sunny nor Ni had paid Orion.[5]

Orion asserted two causes of action: "actual fraudulent transfer" under section 3439.04, subdivision (a), and "tortious interference." Orion alleged that Celestron was directly liable for

_____

[5] Orion alleged that the district court had also granted a civil contempt sanctions motion against Ni, ordering that he pay Celestron $4,203,200.20.

9

fraudulent transfer under the UVTA and was vicariously liable "because [it] aided and abetted and conspired in the wrongful conduct alleged herein." Orion prayed for compensatory damages, punitive damages, declaratory relief, prejudgment interest, attorney fees, and costs.

### 2. *Celestron's demurrer*

Celestron filed a demurrer, a motion to strike portions of the complaint, and requested judicial notice of certain documents from the antitrust litigation. Celestron also filed a special motion to strike under Code of Civil Procedure section 425.16, the anti-SLAPP statute. We discuss the anti-SLAPP motion in a separate section below, and focus here on the demurrer, which is the primary basis for Orion's appeal.

In Celestron's demurrer, it asserted that the antitrust litigation was tried against Ningbo Sunny, and "Celestron was not a party to that lawsuit, did not participate in that lawsuit, is not a debtor on the judgment, did not receive any transfers, and, for obvious due process reasons, is not bound by the findings or determinations made in that lawsuit." Celestron argued that Orion's UVTA claim was "prohibited because Celestron is neither Orion's debtor, nor a transferee of the allegedly fraudulent transfer," and a UVTA claim may be asserted only against a debtor or a transferee. It further asserted that a civil conspiracy claim requires that the defendant owe the plaintiff a duty, and because Celestron owed no duty to Orion, any civil conspiracy theory also failed.

Celestron further asserted that the tortious interference claim failed because a "judgment creditor-debtor relationship is not a 'business' relationship subject to an interference claim." In addition, Celestron argued that Orion already sought and

10

obtained a judicial remedy regarding the transfer, because the district court ordered Ningbo Sunny to transfer Celestron's payment to Orion, so Orion was seeking a double recovery. Celestron further asserted that Orion's claims were barred by the two-year statute of limitations, even under the delayed discovery doctrine, because Orion learned of the alleged transfer in February 2020 but did not file its complaint until November 2022.

3. *Orion's opposition*

In its opposition, Orion asserted that its UVTA claim against Celestron was viable because "[t]he UVTA[ ] expressly provides in the disjunctive that a creditor may recover judgment from a transferee or 'the person for whose benefit the transfer was made.' Civ. Code § 3439.08(b)(1)(A). The complaint alleges that [Celestron] made the transfer to benefit itself by protecting its relationship with Ningbo Sunny, its largest supplier, and to intentionally injure Orion, its biggest competitor."

Orion also argued that California law recognizes liability for aiding and abetting a debtor's evasion of a judgment. Moreover, Orion asserted that Celestron could be liable under a conspiracy theory because Celestron "'owe[d] a duty not to commit an intentional tort against anyone,' including Orion. It violated that duty by conspiring to commit a fraudulent transfer." Orion further asserted that there was no danger of a double recovery because Celestron "fraudulently transferred Ningbo Sunny's accounts receivable to China, [so] Orion has not been able to recover those funds to partially satisfy its judgment, as they are beyond the jurisdiction of U.S. courts."

Orion also asserted that its claim was timely because although Orion knew of the transfer, it "did not know, and could

11

not have known at that time, that Defendant committed the independently wrongful act of interference by *instigating the transfer.*"  It pointed to Celestron's communications with Ningbo Sunny on December 31, 2019 and January 1, 2020, which Orion argued included a "offer to send the money abroad . . . in direct violation of Mr. Ni's sworn declaration to the court."  Orion stated that it learned about this communication in December 2021, so its November 2022 complaint was timely.

Orion further asserted that should the court sustain the demurrer, Orion should be granted leave to amend the complaint.  Celestron filed a reply in support of its demurrer.

4.    *Court ruling*

The motions were argued in a series of hearings on February 2, February 9, and April 7, 2023.  The court then issued a written ruling sustaining Celestron's demurrer without leave to amend.  For the UVTA claim, the court stated that the statute "does not apply to Celestron's payment of a business debt it owed" to Ningbo Sunny.  The court stated, "The only transfer that the statue makes 'voidable' is one that a debtor owes to a 'creditor.'  But Orion is not a creditor of Celestron; and Celestron is not [a] debtor of Orion. Any 'transfer' made by Celestron to *its* creditor, Ningbo, cannot be voided by non-creditor Orion under section 3438.04(a)(1)."  The court also rejected Orion's argument that Celestron was a "person whose benefit the transfer was made" under section 3439.08, section (b)(1)(A), because Celestron was "permitted to act in its own interest by paying a business debt."  The court did not discuss Orion's conspiracy or aiding and abetting theories. The court denied leave to amend the fraudulent transfer cause of action because "Orion has pled all possible facts to support its claim" under the UVTA.

12

The court also sustained the demurrer for what it called the cause of action for "tortious interference with contract." The court stated that Orion's judgment against Ningbo Sunny "gave [Orion] no rights recognized under contract law," and there was no legal restriction preventing Celestron from paying Ningbo Sunny. The court denied leave to amend because Orion "cites no facts it could allege to support such a claim against Celestron." The court stated, "Counsel have stipulated that Celestron's motion to strike and SLAPP motion are withdrawn. The action, therefore, is concluded in the trial court."

Orion filed a notice of appeal on June 5, 2023. The trial court entered a judgment of dismissal on September 6, 2023.[6] We exercise our discretion to treat the premature notice of appeal as a timely appeal from the judgment. (See Cal. Rules of Court, rule 8.104(d)(2); *Brooks v. Mercy Hospital* (2016) 1 Cal.App.5th 1, 4 fn. 2.)

## DISCUSSION

### A. Demurrer

Orion contends the trial court erred in sustaining the demurrer without leave to amend. "'In reviewing a judgment of dismissal after a demurrer is sustained without leave to amend, we assume the truth of all properly pleaded facts. We examine the complaint's factual allegations to determine whether they state a cause of action on any available legal theory regardless of the label attached to a cause of action. [Citation.] We do not assume the truth of contentions, deductions, or conclusions of fact

---

[6]     Neither the notice of appeal nor the court's judgment are in Orion's appellant's appendix, as required by California Rules of Court, rules 8.122(b)(1) and 8.124(b)(1)(A). We trust that counsel will comply with these rules in all future appeals.

13

or law, and may disregard allegations that are contrary to the law or to a fact that may be judicially noticed.' [Citation.] We review de novo a trial court's ruling on a demurrer and examine the operative complaint to determine whether it alleges facts sufficient to state a cause of action under any legal theory." (*Summerfield v. City of Inglewood* (2023) 96 Cal.App.5th 983, 992.)

        1.      *Fraudulent transfer*

Orion asserts that Celestron can be liable for fraudulent transfer for two reasons. First, it asserts ~~that~~ that Celestron can be directly liable under the UVTA either as a "debtor" (§ 3439.01, subd. (b)) or as a "person for whose benefit the transfer was made" (§ 3439.08, subd. (b)(1)(A)). Second, Orion asserts that Celestron can be vicariously liable as a coconspirator or an aider and abettor to Ningbo Sunny's fraudulent transfer. We find that the statutory definitions of debtor and transfer beneficiary under the UVTA do not fit this situation, but that Orion pled a viable cause of action under a conspiracy and/or aiding and abetting theory.

Under the UVTA, a "transfer made or obligation incurred by a debtor is voidable as to a creditor, whether the creditor's claim arose before or after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation . . . [w]ith actual intent to hinder, delay, or defraud any creditor of the debtor." (§ 3439.04, subd. (a)(1).) The UVTA defines a "claim" as "a right to payment" (§ 3439.01, subd. (b)), a "creditor" as "a person that has a claim" (*id.*, subd. (c)), and a "debtor" as "a person that is liable on a claim" (*id.*, subd. (e)).

14

Orion argues that Celestron can be held directly liable under the UVTA. It asserts that Celestron was a "debtor to Orion for the purposes of the UVTA" because Orion "had a claim to the accounts receivable Celestron was holding for Ningbo Sunny." Orion argues that its claim was "unmatured" and was contingent upon the expiration of the federal judgment execution stay.

Celestron disagrees. It asserts there were two different claims with two different debtors: first, the judgment, for which Orion was the creditor and Ningbo Sunny was the debtor; and second, the accounts receivable, for which Ningbo Sunny was the creditor and Celestron was the debtor. Celestron argues that "Orion never had a claim for which Celestron was the debtor," so under the UVTA Celestron cannot be liable as a debtor.

Neither party cites authority directly on point. We also have found no authority holding that a debtor's debtor can be considered the creditor's debtor for purposes of the UVTA. It is telling that although the UVTA is the most recent in "a line of statutes dating to the reign of Queen Elizabeth I" (*Mejia v. Reed* (2003) 31 Cal.4th 657, 664), there appears to be no authority supporting Orion's position. We are not persuaded that Celestron, a stranger to the judgment between Orion and Ningbo Sunny, became Orion's debtor because Ningbo Sunny was Orion's debtor. It does not make sense to interpret "a claim" in the UVTA as a "right to payment" to someone other than the "creditor." Orion's citations about the nature of contingent claims and unmatured claims also do not render Celestron a "debtor" to Orion under the UVTA.

Orion also argues that Celestron may be directly liable under the UVTA because Celestron was a transfer beneficiary under the statute. The UVTA allows a creditor to "recover

15

judgment for the value of the asset transferred," and "[t]he judgment may be entered against . . . [t]he first transferee of the asset or the person for whose benefit the transfer was made." (§ 3439.08, subd. (b)(1)(A).)  Orion argues that Celestron benefited from the transfer, which "allowed it to continue purchasing telescopes from Ningbo Sunny, preserving its business."

Again, legal authority does not support Orion's position.  As the Court of Appeal stated in *Lo v. Lee* (2018) 24 Cal.App.5th 1065 (*Lo*), "[T]he fact that a person received any kind of 'benefit,' no matter how intangible or indirect, from a fraudulent transaction does not necessarily subject that person to liability." (24 Cal.App.5th at p. 1073.)  ""[T]ransfer beneficiary status depends on three aspects of the 'benefit': (1) it must actually have been received by the beneficiary; (2) it must be quantifiable; and (3) it must be accessible to the beneficiary.""  (*Ibid.*)  "[I]n order for a benefit to be 'quantifiable,' '[a] merely theoretical benefit is not sufficient, since it would not be subject to disgorgement.'"  (*Id.* at p. 1074.)

Celestron argues that its transfer cannot meet the test articulated in *Lo*.  First, it did not "receive" the transfer; Celestron was the transferor.  Second, to the extent that Orion asserts Celestron "received" a benefit in its business relationship with Ningbo Sunny, any such benefit is neither quantifiable nor subject to disgorgement.  We agree with Celestron. Celestron did not receive the transfer, and the fact that Celestron received an amorphous "benefit" from its continued business relationship with Ningbo Sunny does not render it a transfer beneficiary under the UVTA.

16

The cases Orion cites do not compel a different result. Orion relies on *Qwest Communications Corp. v. Weisz* (S.D. Cal. 2003) 278 F.Supp.2d 1188 and *Potter v. Alliance United Ins. Co.* (2019) 37 Cal.App.5th 894, for example, but neither case holds that a debtor's debtor may be held directly liable to the debtor's creditor as a transfer beneficiary under the UVTA.

Orion argues that even if Celestron cannot be directly liable for fraudulent transfer under the UVTA, it nevertheless can be vicariously liable under a theory of conspiracy or aiding and abetting. Orion argues that Ningbo Sunny committed a fraudulent transfer under the UTVA, and Celestron either conspired with and/or aided and abetted Ningbo Sunny to effect the transfer. Orion argues that the trial court erred by "failing to even consider" these alternate theories of liability, or in the alternative, by denying leave to amend to allege additional facts to support these theories.

We agree that the complaint adequately stated a claim for conspiracy and/or aiding and abetting a fraudulent transfer.[7] Several California cases have held that a party may be liable for fraudulent transfer as a coconspirator or aider and abettor. (See, e.g., *Aghaian v. Minassian* (2020) 59 Cal.App.5th 447, 459 [recognizing a cause of action for aiding and abetting a

---

[7] "Despite some conceptual similarities, civil liability for aiding and abetting the commission of a tort, which has no overlaid requirement of an independent duty, differs fundamentally from liability based on conspiracy to commit a tort." (*Berg & Berg Enterprises, LLC v. Sherwood Partners, Inc.* (2005) 131 Cal.App.4th 802, 823 fn. 10.) For the most part, these differences are irrelevant for purposes of this demurrer. We therefore discuss the two concepts together.

17

fraudulent transfer in a UVTA case]; *Berger v. Varum* (2019) 35 Cal.App.5th 1013, 1025-1026 [conspiracy theory permitted on a common law fraudulent transfer claim]; *Filip v. Bucurenciu* (2005) 129 Cal.App.4th 825, 837-838 [conspiracy theory permitted on a claim under the former UFTA].)[8]

Celestron acknowledges that California law allows causes of action for conspiracy or aiding and abetting fraudulent transfers, but argues that Orion's complaint did not sufficiently allege such a claim because it was "specifically based upon the UVTA, not the common law tort of fraudulent transfer." Case law does not support this argument. The claims in *Aghaian v. Minassian, supra*, were alleged under the UVTA (see 59 Cal.App.5th at p. 453), and the claims in *Filip v. Bucurenciu, supra*, were alleged under the UVTA's predecessor, the former UFTA (see 129 Cal.App.4th at p. 829). Moreover, "the remedies specified in the UVTA are cumulative and not the exclusive remedy for fraudulent conveyances" (*Berger v. Varum, supra*, 35 Cal.App.5th at p. 1019), so Orion was not barred from asserting a common law claim. Even if Orion could have alleged only a common law fraudulent transfer cause of action rather than a UVTA claim, the trial court was obligated to either overrule the demurrer or grant Orion leave to amend its claim. (See, e.g., *San v. Superior Court* (2013) 57 Cal.4th 364, 370 ["'If the complaint states a cause of action under any theory, regardless of the title under which the factual basis for relief is stated, that aspect of

---

[8] In enacting the UVTA in 2015, the Legislature amended what had previously been known as the Uniform Fraudulent Transfer Act (UFTA). (See *Aghaian v. Minassian, supra,* 59 Cal.App.5th at p. 455 fn. 8.)

18

the complaint is good against a demurrer'"]; *County of Santa Clara v. Superior Court* (2023) 14 Cal.5th 1034, 1041 [leave to amend must be granted where there is a reasonable possibility that the defect can be cured by amendment].)

Here, Orion's allegations were sufficient to allege a cause of action for conspiracy or aiding and abetting a fraudulent transfer. (See, e.g., *Taylor v. S & M Lamp Co.* (1961) 190 Cal.App.2d 700, 706 ["'a debtor and those who conspire with him to conceal his assets for the purpose of defrauding creditors are guilty of committing a tort and each is liable in damages'"]; *Berger v. Varum, supra*, 35 Cal.App.5th at p.1025 [same]; *Monastra v. Konica Business Machines, U.S.A., Inc.* (1996) 43 Cal.App.4th 1628, 1644-1645 ["The elements of civil conspiracy are the formation and operation of the conspiracy and damage resulting to the plaintiff"].) Orion alleged that Celestron and Ningbo Sunny arranged and completed the transfer outside the course of ordinary business for the purpose of thwarting Orion's efforts to collect on its judgment against Ningbo Sunny. Orion further alleged that Celestron was aware of Orion's judgment and Ni's declaration about not transferring assets out of the country. Orion alleged that Celestron "directly participated in a scheme to orchestrate the Fraudulent Transfer," and was "separately liable because [Celestron] aided and abetted and conspired in the wrongful conduct." These allegations were sufficient to state a cause of action for aiding and abetting and/or conspiring to commit a fraudulent transfer.

Celestron asserts that these allegations are insufficient under a conspiracy theory, because "[b]y its nature, tort liability arising from conspiracy presupposes that the coconspirator is legally capable of committing the tort, i.e., that he or she owes a

19

duty to plaintiff recognized by law and is potentially subject to liability for breach of that duty." (*Applied Equipment Corp. v. Litton Saudi Arabia Ltd.* (1994) 7 Cal.4th 503, 511.) Celestron asserts that because it did not have a duty to Orion as a debtor under the UVTA, it did not owe Orion a duty at all. The Court of Appeal rejected a similar argument in *Filip v. Bucurenciu, supra*, 129 Cal.App.4th at p. 837, stating that "a claim under the [former] UFTA in fact involves tortious conduct. In fraudulently transferring property, tortious conduct occurred." Even non-debtors have a duty not to knowingly participate in a fraudulent transfer intended to impede collection on a judgment. Moreover, no such duty is required under an aiding and abetting theory.

Celestron also argues that any version of Orion's fraudulent transfer cause of action fails because the transfer was not fraudulent; it was a legitimate payment for inventory Celestron received. However, Orion has alleged that Celestron paid the invoice before it was due—and before the stay for judgment enforcement expired—for the purpose of helping Ningbo Sunny evade Orion's judgment collection. "Whether a debtor had the actual intent to hinder, delay, or defraud a creditor is a question of fact." (*Aghaian v. Minassian, supra,* 59 Cal.App.5th at p. 456; see also *Filip v. Bucurenciu, supra*, 129 Cal.App.4th at p. 837 ["the timing of transfers and the circumstances relating to those transfers" may support a finding that the defendants conspired to defraud the plaintiff].) For purposes of the demurrer, we presume Orion's factual allegations are true.

Celestron further argues that Orion has not adequately alleged any damages, because it already has a judgment against Ningbo Sunny and recovery of the approximately $4.2 million

payment from Celestron would constitute a double recovery. However, Orion has sought various remedies, such as declaratory relief, costs, and the attorney fees it has incurred in attempting to recover the transferred assets. Damages claims such as costs of suit may "fall within the scope of recoverable tort damages and satisfy the damage element for a fraudulent transfer claim for purposes of demurrer." (*Berger v. Varum, supra,* 35 Cal.App.5th at p. 1021.) Thus, Orion has stated a viable claim for damages.[9]

Thus, Orion's complaint adequately stated a cause of action for fraudulent transfer under a conspiracy theory and/or an aiding and abetting theory of liability. The demurrer to this cause of action should have been overruled.

2. *Tortious interference*

Orion also contends the trial court erred in sustaining the demurrer for the cause of action Orion titled "tortious interference." "California has traditionally recognized two economic relations torts: interference with the performance of a contract [citation] and interference with a prospective economic relationship." (*Ixchel Pharma, LLC v. Biogen, Inc.* (2020) 9 Cal.5th 1130, 1140-1141 (*Ixchel Pharma*).) Orion's complaint

---

[9]     Celestron cites *David S. Karton, a Law Corp. v. Musick, Peeler Garrett LLP* (2022) 83 Cal.App.5th 1027, 1044 for the proposition that "attorney fees are not recoverable in [a] case for fraudulent transfer." This case considered whether attorney fees were recoverable under "the tort of another doctrine"—not whether fees are recoverable in fraudulent transfer cases generally. (*Id.* at p. 1043.) Other case authority holds that attorney fees "expended to enforce a judgment against third parties who conspired with the judgment debtor to evade its enforcement" are recoverable under certain circumstances. (*Cardinale v. Miller* (2014) 222 Cal.App.4th 1020, 1025.)

21

listed its cause of action as simply "tortious interference" without further elucidation. The trial court interpreted this imprecise wording as a cause of action for intentional interference with performance of a contract, and held that because Orion had "no rights under contract law" as a result of its judgment against Ningbo Sunny, Orion failed to state a valid cause of action.

On appeal, the parties discuss the cause of action as one for tortious interference with prospective economic advantage. To state a claim for tortious interference with prospective economic advantage, a plaintiff must plead and prove (1) that the plaintiff and a third party have an economic relationship that carries the probability of future economic benefit to the plaintiff, and (2) that the defendant knowingly interfered with that relationship. (*Ixchel Pharma, supra,* 9 Cal.5th at p. 1141.)

Orion asserts that its judgment against Ningbo Sunny can constitute an "economic relationship," citing a single case from the United States District Court, Northern District of Illinois, *DAN Joint Venture III, L.P. v. Touris* (N.D. Ill. 2019) 598 B.R. 430, 435. In that case, a plaintiff alleged that several defendants conspired to fraudulently transfer the assets of a debtor. The court held that the plaintiff failed to allege facts to support a claim for tortious interference with prospective economic advantage, in part because the plaintiff "fail[ed] to point to any factual allegations establishing that [one defendant] had knowledge of any judgments or citations against [the debtor]." (*Id.* at p. 448.) Even if we were to consider this case as persuasive authority, its statement about the plaintiff's pleading failures does not constitute a finding that a judgment is a prospective economic advantage for purposes of this cause of action. "It is axiomatic that cases are not authority for

22

propositions that are not considered." (*Cal. Bldg. Industry Assn. v. State Water Resources Control Bd.* (2018) 4 Cal.5th 1032, 1043.)

Celestron correctly points out that cases involving tortious interference with economic advantage typically involve commercial transactions. For example, in *Della Penna v. Toyota Motor Sales, U.S.A., Inc.* (1995) 11 Cal.4th 376, 392 (*Della Penna*), cited with approval in *Ixchel Pharma, supra*, 9 Cal.5th at p. 1142, our Supreme Court considered tortious interference causes of action as straddling "the analytical line between interference with an existing business contract and interference with commercial relations *less* than contractual." The court acknowledged that "[b]ecause ours is a culture firmly wedded to the social rewards of commercial contests, the law usually takes care to draw lines of legal liability in a way that maximizes areas of competition free of legal penalties." (*Ibid.*) Similarly, in Witkin's Summary of California Law the tort is listed in the section addressing "Interference with Business Relations," explaining that the cause of action "impose[s] liability for intentional interference with business relations or advantages that are merely prospective and ordinarily not the subject of an existing contract. The wrong consists of intentional and improper methods of diverting or taking business from another that are not within the privilege of fair competition." (5 Witkin, Summary of Cal. Law (2024) 11th Torts § 854.) The Restatement (Third) of Torts states that "the tort generally involves cases in which a defendant's intentional wrong prevents the plaintiff from making a contract with another party or otherwise pursuing economic gain." (Restatement (Third) of Torts: Liab. for Econ. Harm § 18 (2020).)

23

Orion's judgment was neither an existing commercial contract nor a relationship suggesting future business relations. Rather, the judgment against Ningbo Sunny constituted an existing legal entitlement. There is a "distinction between claims for the tortious disruption of an *existing* contract and claims that a *prospective* contractual or economic relationship has been interfered with by the defendant." (*Della Penna, supra,* 11 Cal.4th at p. 392.) For purposes of the tort, prospective economic relationships "are only 'probable' [citation], and harms resulting from a breach of such relationships are 'speculative' [citation]. Neither party to such a relationship has a legal claim to continued relations with the other." (*Ixchel Pharma, supra*, 9 Cal.5th at p. 1146.) Orion's existing judgment against Ningbo Sunny does not meet the definition of a prospective economic relationship.

Moreover, Orion's cause of action for tortious interference with prospective economic advantage was time-barred under the two-year statute of limitations. (See Code Civ. Proc., § 339, subd. (1); *Augusta v. United Service Automobile Assn.* (1993) 13 Cal.App.4th 4, 10.) The transfer at issue was completed on January 1, 2020, and Orion's complaint was filed on November 10, 2022. Even including the approximately six-month tolling period under Emergency Rule 9,[10] Orion's complaint was filed beyond the two-year statute of limitations.

Orion does not dispute that the claim is time-barred on its face, but asserts that accrual of its claim was tolled by the delayed discovery doctrine. "[A] cause of action accrues at 'the

---

[10] "COVID-19 Emergency Rule 9(a) . . . tolled unexpired limitations periods from April 6, 2020 until October 1, 2020." (*Ross v. Seyfarth Shaw LLP* (2023) 96 Cal.App.5th 722, 743.)

time when the cause of action is complete with all of its elements,'" but the delayed discovery doctrine "postpones accrual of a cause of action until the plaintiff discovers, or has reason to discover, the cause of action." (*Fox v. Ethicon Endo-Surgery, Inc.* (2005) 35 Cal.4th 797, 806-807 (*Fox*).) "In order to rely on the discovery rule for delayed accrual of a cause of action, '[a] plaintiff whose complaint shows on its face that his claim would be barred without the benefit of the discovery rule must specifically plead facts to show (1) the time and manner of discovery and (2) the inability to have made earlier discovery despite reasonable diligence.'" (*Id.* at p. 808.)

The complaint does not include any facts about delayed discovery, but Orion asserts that with leave to amend the complaint, it could allege the necessary facts. It acknowledges that it knew of the transfer in February 2020. Orion's request for sanctions filed in the antitrust action in February 2020 show that Orion was aware that Celestron and Ningbo Sunny discussed "judgment enforcement" on January 1, 2020, and that Ningbo Sunny emailed Celestron requesting payment on January 1, 2020. Orion also had the remittance showing Celestron's payment, and stated in its February 2020 federal filing that under Celestron and Ningbo Sunny's net 100 payment agreement, payment on the invoices was not yet due. Orion argued to the federal court that these facts showed that Celestron made the payment early "[t]o ensure that Orion could not collect any of these assets."

Orion now contends it was missing "key facts" until December 2021, when Orion received a copy of a December 31, 2019 email from Celestron's counsel to Ningbo Sunny's counsel requesting a "[r]elatively urgent" call to "discuss Celestron's

25

plans vis a vis Ningbo Sunny." Orion argues that its receipt of this email in December 2021 was the first time Orion discovered that Celestron "committed [an] independently wrongful act" of making an "offer to send the accounts receivable funds overseas."

We are not persuaded. "Under the discovery rule, suspicion of one or more of the elements of a cause of action, coupled with knowledge of any remaining elements, will generally trigger the statute of limitations period." (*Fox, supra*, 35 Cal.4th at p. 807.) Orion was aware of the transfer and its allegedly fraudulent nature in February 2020; it had ample information to either pursue the cause of action or further investigate Celestron's role. It argued to the federal court in February 2020 that the transfer was made outside the scope of normal business practices with the intent of evading Orion's judgment efforts. Moreover, which party initiated the discussion is not an element of the cause of action, so discovery of this fact does not support delayed accrual of the claim. Under these facts, the delayed discovery doctrine would not render Orion's claim timely. The demurrer to this cause of action was appropriately sustained.

## B. Special motion to strike

As noted above, Celestron also filed an anti-SLAPP special motion to strike along with its demurrer. The trial court did not rule on the anti-SLAPP motion, stating that the motion had been withdrawn by the parties' stipulation. Orion argues that the trial court erred "by failing to find Celestron's withdrawn anti-SLAPP motion frivolous and failing to award Orion fees." Celestron asserts that because the "anti-SLAPP motion was withdrawn by stipulation," that "should end the inquiry." We find that Orion has forfeited any claim to error on appeal by agreeing—or not

26

objecting—to the court's statements that it would not rule on the anti-SLAPP motion if it sustained the demurrer.

1. *Background*

Celestron filed an anti-SLAPP special motion to strike to be heard on the same day as its demurrer and motion to strike. Celestron requested that the court ~~to~~ strike 13 specific paragraphs or portions of the complaint; it did not request that entire causes of action be stricken. Celestron explained that the allegations it sought to strike discussed communications involving counsel for Celestron and/or Ningbo Sunny. For example, Celestron sought to strike a statement in paragraph 5 of the complaint stating that Celestron's attorney sent an email to Ningbo Sunny's attorney on December 31, 2019 requesting an "urgent" call. Celestron asserted that these communications were directly related to the antitrust lawsuit and related judgment enforcement proceedings, and therefore were privileged under Civil Code section 47.[11]

Orion opposed the anti-SLAPP motion. It asserted that its claims arose from the fraudulent transfer, which was not protected activity, and counsel's conversations were cited only as evidence of the wrongful activity. (See, e.g., *Park v. Board of Trustees of California State University* (2017) 2 Cal.5th 1057, 1060 [under the anti-SLAPP statute, "a claim may be struck only if the speech or petitioning activity itself is the wrong complained of, and not just evidence of liability or a step leading to some different act for which liability is asserted"].) Orion also argued that the anti-SLAPP motion was frivolous, and requested an award of costs and attorney fees.

---

[11] Celestron also sought to strike these statements in its regular motion to strike.

27

At the first hearing on the demurrer, motion to strike, and anti-SLAPP motion on February 3, 2023, the court and parties discussed their positions on the three motions.  The court stated that ~~that~~ it had not yet prepared a tentative ruling on the motions, and asked, "[I]f I rule upon the demurrer, I presume I still have to rule upon the special motion to strike[?]"  Celestron's counsel answered in the affirmative.  After discussing some substantive issues, the court asked which motion should be decided first. Orion's counsel asserted that "the anti-SLAPP motion ought to go first" because it could be easily denied.

The court and parties then discussed some of the substantive arguments about the anti-SLAPP motion. The court said, "A ruling on the SLAPP motion is appealable immediately which will stop this case for two years. Do each of you want that to occur?"  Orion's counsel said, "We want the case to go forward." The court noted that Celestron wanted certain allegations about counsel's involvement to be stricken from the complaint, and Celestron "doesn't care about the SLAPP motion as long as those allegations are removed."  The court asked, "As a matter of strategy, do the two of you think this SLAPP motion is unnecessary presuming I were to rule on the regular motion to strike so you can get on with this trial rather than going up on appeal . . . ?"  Orion's counsel answered, "[I]f the Court wants to rule on the regular motion, that's fine.  But I don't know how that would work procedurally.  They've made an anti-SLAPP motion." The court said, "Someone would have to withdraw it."  Orion's counsel responded, "I'm fine if they want to withdraw their anti-SLAPP motion."

Celestron's counsel said, "If the Court sustains the demurrer without leave to amend and/or strikes the allegations

28

against the lawyers on a regular Motion to Strike, then we would stipulate under those circumstances that the anti-SLAPP motion could be treated as withdrawn. . . ." The court noted, "If you withdraw the anti-SLAPP motion, there could be no appeal because it's not ruled upon." Celestron's counsel agreed, and said, "It has to be stipulated that it's withdrawn and nobody gets any fees under it." The court and parties went on to discuss scheduling for discovery and trial, and the court suggested setting a further hearing on the motions, with a hearing for the demurrer and motion to strike one day and a hearing on the anti-SLAPP motion the following day. The parties and court discussed some additional issues, then the court said, "I think what we've done indirectly is reached a conclusion that if there is a way which is legitimate, we don't want a ruling on the SLAPP motion because it's appealable." Orion's counsel said, "I understand, but it's also – there's no basis for striking these allegations from a pleading . . . ." There was no further discussion that day about the court deciding the anti-SLAPP motion.

At the next hearing on February 9, 2023, Celestron's counsel stated again that if the court granted the regular motion to strike, thus removing certain allegations from the complaint, Celestron would withdraw the anti-SLAPP motion. Orion's counsel did not object or say anything about Celestron's suggestion, but asserted that the allegations were relevant to show intent to defraud. The court again questioned whether it should first decide the demurrer and motion to strike or the anti-SLAPP motion. Celestron's counsel suggested that if the demurrer were sustained, "we will put in abeyance or dismiss our anti-SLAPP motion so you don't have to rule on it, and then we

29

can streamline it that way." The court agreed, and asked, "Does that make sense?" Orion's counsel said, "I'm fine with the court ruling on the demurrer. I think it should just be overruled." He added, "Whatever order the court wants to do it in is fine by us." Celestron's counsel then said, "So let me be very clear. . . . [I]f everything is sustained short of the anti-SLAPP, if it's sustained without leave to amend, we'll drop the anti-SLAPP even though we don't have to." The court complimented both counsel on a "very smart" way "in which we can get a ruling without an appeal on the anti-SLAPP," which would "stop[ ] everything for two years" for an appeal. Orion's counsel did not object. The court asked counsel to return for a final hearing, saying it would prepare a tentative ruling.

At the continued hearing on April 7, 2023, the parties discussed the merits of the demurrer. Near the end of the hearing, the court said that it was inclined to stick to its tentative ruling, but "I will change it [by] adding a new paragraph saying 'pursuant to the argument this morning, defendant withdraws their . . . special motion to strike.'" Celestron's counsel said, "Correct," and Orion's counsel did not say anything. The court thanked counsel for their thoughtful arguments on a difficult issue, both counsel thanked the court, and the hearing ended.

The court's April 7, 2023 written ruling sustaining the demurrer states in part, "Counsel have stipulated that Celestron's motion to strike and SLAPP motion are withdrawn. The action, therefore, is concluded in the trial court." Nothing in the record suggests that Orion objected to this statement or sought any further ruling on the anti-SLAPP motion. Orion filed a notice of appeal on June 5, 2023. After being informed by this court that a judgment of dismissal was required, Orion sought

30

and received a judgment of dismissal from the trial court. Nothing in these additional documents suggest that Orion sought a ruling on the anti-SLAPP motion before seeking the judgment of dismissal.

2. *Analysis*

Orion now argues that after Celestron "withdrew its anti-SLAPP motion," the trial court "should have then held the anti-SLAPP [motion] to be frivolous and determined the amount of fees that should be payable to Orion as a sanction." Orion relies on Code of Civil Procedure, section 425.16, subdivision (c)(1), which states in part, "If the court finds that a special motion to strike is frivolous or is solely intended to cause unnecessary delay, the court shall award costs and reasonable attorney's fees to a plaintiff prevailing on the motion."

We agree with Celestron that Orion has failed to demonstrate that the trial court erred. Orion appeared to agree with the trial court and Celestron's proposal about withdrawing the anti-SLAPP motion. At three different hearings, the trial court discussed Celestron's offer to withdraw the anti-SLAPP motion, resulting in the court not ruling on the motion and there being no appeal from the ruling. Orion's counsel agreed with this plan, never objected to it, and never argued that Celestron's withdrawal of the motion nevertheless required the court to make findings and award attorney fees.

Even after the trial court sustained the demurrer without leave to amend and stated that the anti-SLAPP motion had been withdrawn by stipulation, Orion did not seek to correct the court about the nature (or existence) of the stipulation. Nor did Orion move for an award of attorney fees. Rather, Orion asserts that this court, in the first instance, should consider the merits of the

31

motion, find the motion frivolous, then "direct the trial court on remand to determine the amount of fees Celestron should pay Orion in sanctions."

We decline to do so. "[T]he burden is on an appellant to demonstrate . . . that the trial court committed an error that justifies reversal of the judgment." (*Jameson v. Desta* (2018) 5 Cal.5th 594, 609.)  Here, Orion appeared to comply with the plan to have the anti-SLAPP motion withdrawn without a ruling. Orion has not shown that the trial court's actions in not ruling on the motion constituted reversible error.

## DISPOSITION

The judgment is reversed and the matter is remanded.  The trial court is directed to enter a new order overruling Celestron's demurrer on the cause of action for fraudulent transfer and

sustaining the demurrer on the cause of action for tortious interference.  Orion is entitled to its costs on appeal.


COLLINS, J.

We concur:


CURREY, P. J.


ZUKIN, J.

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| OPTRONIC TECHNOLOGIES, INC., <br><br>     Plaintiff and Appellant, <br><br>     v. <br><br> CELESTRON ACQUISITION, LLC, <br><br>     Defendant and Respondent. | B330798 <br><br> (Los Angeles County <br> Super. Ct. No.22STCV35723) <br><br> ORDER CERTIFYING OPINION FOR PARTIAL PUBLICATION |

THE COURT:*

    Good cause appearing, it is ordered that the opinion in the above entitled matter, filed January 15, 2025, be certified for publication with the exception of part B. of the Discussion section.

_____
CURREY, P.J.*          COLLINS, J.          ZUKIN, J.