Filed 3/6/26  WVJP 2018-3 v. Rechnitz CA2/3

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION THREE

| | |
|---|---|
| WVJP 2018-3, LP, | B339960 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. 21STCV06658) |
| v. | |
| SHLOMO RECHNITZ et al., | |
| Defendants and Appellants. | |

APPEAL from an order of the Superior Court of Los Angeles County, Steve Cochran, Judge.  Affirmed.

The Wagner Firm, Avraham Wagner and Charissa Morningstar for Defendants and Appellants.

Manasserian Law and Armen Manasserian for Plaintiff and Respondent.

————————————————

Plaintiff and respondent WVJP 2018-3 LP is the assignee of a judgment entered against Robert Rechnitz in a breach of contract action. The underlying contract contained an attorney fees provision. Plaintiff sued defendants and appellants Shlomo Rechnitz and SR Capital, LLC (the SR defendants), seeking to hold them liable for the amount of the judgment on the ground that they conspired with Robert to hinder, delay, and defraud the judgment creditors.[1] The trial court sustained the SR defendants' demurrer. A panel of this court affirmed on appeal. The SR defendants then sought attorney fees pursuant to Civil Code section 1717.[2] The trial court denied their motion. The SR defendants now appeal, contending they are entitled to fees because plaintiff sought to hold them responsible for the judgment on an alter ego theory. We disagree and affirm the trial court's order.

## FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff is the assignee of a $787,919.17 judgment against Robert. The judgment was based on a breach of a profit interest agreement that Robert guaranteed. The agreement contained an attorney fees provision.

In February 2021, plaintiff filed a complaint against the SR defendants, Marlene Springer Savage, Stanley Treitel, and Robert, asserting a single cause of action for conspiracy based on a "Money Laundering Scheme."[3] The trial court sustained the SR defendants' demurrer with leave to amend. Plaintiff filed a first

---

[1] Because Robert and Shlomo share a last name, we refer to them by their first names for clarity.

[2] Undesignated statutory references are to the Civil Code.

[3] Only the SR defendants are parties to this appeal.

2

amended complaint asserting a conspiracy cause of action, to which the SR defendants successfully demurred.

In September 2021, plaintiff filed a second amended complaint (SAC).[4]  The SAC asserted four causes of action: (1) damages for conspiracy to hinder, delay, or defraud creditors; (2) "Relief Against Fraudulent Transactions Under the Uniform Voidable Transactions Act, Civil Code § 3439 et seq."; (3) "Creditor's Suit in Aid of Enforcement of Judgment Under Code of Civil Procedure § 708.210 et seq."; and (4) "Quia Timet [Constructive Trust, Equitable Lien, Resulting Trust, Injunction, Appointment Of Monitor]."  The SAC also sought an accounting.

As a panel of this court previously described: "The SAC alleges that plaintiff is an assignee to a judgment creditor and has a claim against Robert, as debtor, based upon a civil judgment entered in August 2016 and amended in December 2016 in the Los Angeles Superior Court, in the sum of $787,919.17, with interest accruing at the rate of $215.81 per day.  Robert is the uncle of Shlomo, who is the only officer, director, member, and manager with any actual or real authority over SR Capital.

"In September 2016, Treitel and Savage (together, the HWP defendants) opened a checking account under the fictitious name Highland Wilshire Properties (the HWP account).  The SAC alleges that, by the express agreement of the defendants, the purpose of the account was 'to hold money in which [Robert]

---

[4]  We take judicial notice of our nonpublished opinion resolving plaintiff's direct appeal, *WVJP 2018-3 LP v. SR Capital LLC* (Aug. 23, 2023, B317658) (*WVJP 2018-3 LP*).  (Evid. Code, §§ 451, 459.)

3

had an interest beyond the reach of his creditors in order to pay his personal expenses from time to time at his special instance and request.' After the HWP account was opened, the HWP defendants, acting at Robert's direction, 'received money in which [Robert] had an interest from entities controlled by [Shlomo], including, without limitation, [SR Capital],' and then used these funds to pay Robert's personal expenses. The HWP account was intended by the defendants to permit Robert 'to use and enjoy money in which he had an interest while at the same time avoiding execution levy by Plaintiff . . . since the HWP [a]ccount was not a deposit account standing in the name of [Robert],' and in fact permitted him to do so.

"The SAC alleges that, between December 2016 and November 2020, SR Capital transferred over $1.5 million to the HWP account via 66 transactions in amounts ranging from $5,000 to $250,000. The day before each of the transfers was made, Robert and Shlomo 'agreed that [SR Capital] would transfer [the relevant amount] of [Robert's] money, which [SR Capital] held for his benefit with the knowledge and consent of its Manager, [Shlomo], to the HWP Account . . . for the express purpose of aiding [Robert] in an effort to hinder, delay, or defraud his creditors.' " (*WVJP 2018-3 LP*, *supra*, B317658.)

"The SAC further alleges that, between January and November 2020, approximately $166,000 was withdrawn from the HWP account, via 237 transactions in amounts ranging from $3.14 to $9,620.75, for Robert's benefit." (*WVJP 2018-3 LP*, *supra*, B317658.)

"The SAC does not plead facts explaining how Robert had an interest in or right to the money held by SR Capital and subsequently transferred to the HWP account, notwithstanding

that Shlomo was the sole owner and manager of SR Capital." (*WVJP 2018-3 LP*, *supra*, B317658.)

The SAC alleged that the challenged financial transactions constituted a "Money Laundering Scheme" and Robert used the SR defendants and the HWP Account "as his personal 'piggy banks.' " It asserted that the defendants "acted in concert" to transfer and launder Robert's money. The SAC did not include any alter ego allegations.

The SR defendants demurred on the ground that the SAC's allegations were insufficient to state a claim. In relevant part, the demurrer asserted: "Plaintiff does not allege that Robert controlled Shlomo or SR Capital." The demurrer also emphasized that the SAC did not allege "that either SR defendant acted as Robert's agent when making these transfers," "Plaintiff admits that Shlomo is 'the only owner, officer, director, member, and manager with any actual or real authority over' SR Capital," and "Plaintiff has pleaded that Shlomo has complete ownership and control of SR Capital."

The trial court sustained the demurrer without leave to amend and dismissed the action with prejudice as to the SR defendants. The court concluded plaintiff failed to adequately allege facts showing that Robert had any interest in the money transferred by the SR defendants. Plaintiff appealed. A panel of this court affirmed the trial court judgment.

Following the remittitur, the SR defendants filed the underlying motion for attorney fees pursuant to section 1717. They contended plaintiff attempted to hold them "liable on the Judgment through the alter ego doctrine, as alleged in the Conspiracy Claim." They relied on two cases interpreting section 1717, *MSY Trading Inc. v. Saleen Automotive, Inc.* (2020)

51 Cal.App.5th 395 (*MSY Trading*), and *347 Group, Inc. v. Hawkins* (2020) 58 Cal.App.5th 209 (*347 Group*), to argue that they were entitled to attorney fees as the prevailing parties despite being nonsignatories to the underlying profit interest agreement.

The trial court denied the attorney fee motion, concluding that the "case is not governed by *MSY Trading, Inc. vs. Saleen Auto., Inc.* (2020) 51 Cal.App.5th [395]." The SR defendants timely appealed.

## DISCUSSION

## Section 1717 Does Not Entitle the SR Defendants To Attorney Fees Because They Faced No Liability on the Underlying Contract

### A. Section 1717 and nonsignatory defendants

The SR defendants rely on section 1717 as the statutory basis for their fee motion. Section 1717, subdivision (a), provides: "In any action on a contract, where the contract specifically provides that attorney's fees and costs, which are incurred to enforce that contract, shall be awarded either to one of the parties or to the prevailing party, then the party who is determined to be the party prevailing on the contract, whether he or she is the party specified in the contract or not, shall be entitled to reasonable attorney's fees in addition to other costs."

In *Reynolds Metals Co. v. Alperson* (1979) 25 Cal.3d 124, 128, our high court held that section 1717 must be "interpreted to further provide a reciprocal remedy for a nonsignatory defendant, sued on a contract as if he were a party to it, when a plaintiff would clearly be entitled to attorney's fees should he prevail in enforcing the contractual obligation against the defendant." The *Reynolds Metals* defendants were shareholders and directors of a

6

company that owned a subsidiary.  The plaintiff attempted to hold the defendants personally liable for the two companies' debts when the companies became insolvent.  (*Reynolds Metals*, at p. 127.)  The promissory notes establishing the debts contained attorney fee provisions.  (*Ibid*.)  The plaintiff alleged the defendants were "alter egos" of the companies.  (*Ibid*.)  The trial court rejected the plaintiff's alter ego theory and awarded the defendants attorney fees.  (*Ibid*.)  Our high court held that section 1717 entitled the defendants to fees because "[h]ad plaintiff prevailed on its cause of action claiming defendants were in fact the alter egos of the corporation [citation], defendants would have been liable on the notes.  Since they would have been liable for attorney's fees pursuant to the fees provision had plaintiff prevailed, they may recover attorney's fees pursuant to section 1717 now that they have prevailed." (*Reynolds Metals*, at p. 129.)

We review de novo whether a party is entitled to attorney fees under section 1717.  (*347 Group*, *supra*, 58 Cal.App.5th at p. 213.)

> **B. The SAC did not allege the SR defendants are alter egos of Robert or seek reverse veil piercing, thus *MSY Trading* and *347 Group* do not apply**
>
> **1. *MSY Trading* and *347 Group***

The SR defendants' primary argument on appeal is that under the reasoning of *MSY Trading*, *supra*, 51 Cal.App.5th 395, and *347 Group*, *supra*, 58 Cal.App.5th 209, they are entitled to attorney fees under section 1717.  We disagree.  Both cases concerned a judgment creditor's unsuccessful attempt to hold a third party liable for a judgment as the alter ego of the judgment

7

debtor. Here, the SAC did not assert an alter ego theory or include other allegations claiming the SR defendants stepped into Robert's shoes as a party to the profit interest agreement. The SAC's claims against the SR defendants were not "on a contract." *MSY Trading* and *347 Group* are therefore inapposite.

In *MSY Trading*, the plaintiffs obtained a judgment in a breach of contract action. They then filed a separate action against different defendants, "seeking to hold them liable on the judgment as alter egos of the judgment debtors." (*MSY Trading, supra*, 51 Cal.App.5th at p. 398.)[5] When the plaintiffs lost against one of those defendants, he sought attorney fees under the contract. The trial court awarded him fees pursuant to section 1717. (*MSY Trading*, at p. 400.)

The Court of Appeal affirmed, holding that the plaintiffs' suit was an "action on the contract" within the meaning of section 1717. If the plaintiffs had asserted the alter ego allegations in the original suit, and the defendant had prevailed, he would have been entitled to fees. (*MSY Trading, supra*, 51 Cal.App.5th at p. 402.) That the plaintiffs attempted to hold the

---

[5] Plaintiff requests that we take judicial notice of the complaint filed in *MSY Trading* as a record of a court of this state. (Evid. Code, § 452, subd. (d).) Plaintiff argues the complaint is necessary to establish that the relief sought was based on alter ego liability. We decline to take judicial notice of the complaint as it is not necessary to our disposition and was not presented to the trial court. (*OneTaste Inc. v. Netflix, Inc.* (2025) 116 Cal.App.5th 174, 194; *Ross v. Seyfarth Shaw LLP* (2023) 96 Cal.App.5th 722, 745–746.) Further, the published opinion in *MSY Trading* sufficiently describes the factual and procedural background relevant to the opinion's reasoning and conclusions.

defendant liable for the judgment in a subsequent action did not change the result.

The court reasoned that, generally, when a judgment is rendered in a case involving a contract that includes an attorney fees provision, " ' " 'the judgment extinguishes all further contractual rights.' " ' " (*MSY Trading*, *supra*, 51 Cal.App.5th at p. 403, quoting *Cardinale v. Miller* (2014) 222 Cal.App.4th 1020, 1026.)  However, "[t]hat rule is certainly true in general, but not as to an alter ego claim.  The reason an alter ego can be added to a judgment is because, in the eyes of the law, the alter ego *was* a party, albeit by a different name.  [Citation.]  To give effect to the principles inherent in *Reynolds Metals* and Civil Code section 1717, we employ a similar analysis for a prevailing alleged alter ego: it is as though the alleged alter ego *was* a party to the original lawsuit, and prevailed.  Consequently, a postjudgment, independent action to establish alter ego liability for a judgment on a contract is itself an action on the contract." (*MSY Trading*, at p. 403.)

*347 Group* similarly involved an attempt to hold defendants liable as the alter egos of a judgment debtor.  (*347 Group*, *supra*, 58 Cal.App.5th at p. 212.)  After the plaintiff (347 Group) obtained a default judgment for breach of contract against the judgment debtor (Architect, Inc.), it sought to hold two other defendants liable on an alter ego theory for fraudulent conveyance and conspiracy claims.  (*Ibid*.)  Those defendants prevailed, with the trial court finding they were not liable as alter egos.  The defendants then sought attorney fees under section 1717.  (*347 Group*, at p. 213.)  The trial court denied their motion on the basis that the asserted tort causes of action were

9

not actions on a contract.  One defendant (Hawkins) appealed. (*Id.* at p. 212.)

The Court of Appeal reversed.  It expressly followed *Reynolds Metals* and also agreed with *MSY Trading*.  (*347 Group*, *supra*, 58 Cal.App.5th at p. 214.)  The court adopted the reasoning from *MSY Trading* that " '[t]o give effect to the principles inherent in *Reynolds Metals* and . . . section 1717, we employ a similar analysis for a prevailing alleged alter ego: it is as though the alleged alter ego was a party to the original lawsuit, and prevailed.  Consequently, a postjudgment . . . action to establish alter ego liability for a judgment on a contract is itself an action on the contract' regardless of which procedural vehicle the plaintiff employs."  (*347 Group*, at p. 215, quoting *MSY Trading*, *supra*, 51 Cal.App.5th at p. 403.)  Thus, the court held that "because 347 Group's alter ego action was on the contract and Architect, Inc., the party Hawkins was alleged to be the alter ego of, was liable for attorney fees under the contract, Hawkins is entitled to attorney fees."  (*347 Group*, at p. 215.)

Likewise, in *Westwood Homes, Inc. v. AGCPII Villa Salerno Member, LLC* (2021) 65 Cal.App.5th 922, 930, 931, the court, relying on *Reynolds Metals*, *MSY Trading*, and *347 Group*, held that third parties in a contract-based dispute were entitled to attorney fees under section 1717 after they defeated the judgment creditors' motion to amend judgments to add the third parties as alter ego judgment debtors.  The alter ego allegations were dispositive in determining the third parties' entitlement to attorney fees.  "So far as the substance of the alter ego allegations is concerned, it is as though [the third parties] were parties to the original action, and prevailed."  (*Id.* at p. 931, citing *MSY*

*Trading, supra,* 51 Cal.App.5th at p. 403, and *347 Group, supra,* 58 Cal.App.5th at p. 215.)

In each of the above cases, the determinative factor was that the judgment creditors alleged that third parties were alter egos of, and thus stood in the shoes of, the judgment debtors who were the parties to the contract underlying the judgment. As a result, and irrespective of the procedural mechanism, the effort to have a third party recognized as an alter ego judgment debtor was an action on a contract within the meaning of section 1717. The prevailing party was thus entitled to attorney fees.

2.      **The SAC's claims against the SR defendants were not based on an alter ego theory**

In general, the "two requirements for applying the alter ego doctrine are that (1) there is such a unity of interest and ownership between the corporation and the individual or organization controlling it that their separate personalities no longer exist, and (2) failure to disregard the corporate entity would sanction a fraud or promote injustice." (*Communist Party v. 522 Valencia, Inc.* (1995) 35 Cal.App.4th 980, 993.) Thus, "the plaintiff must plead and prove such a unity of interest and ownership that the separate personalities of the corporation and the individuals do not exist, and that an inequity will result if the corporate entity is treated as the sole actor." (*Vasey v. California Dance Co.* (1977) 70 Cal.App.3d 742, 749.)

The traditional alter ego doctrine applies to hold an individual personally liable for the acts of a corporate entity. That was not the factual basis for the SAC, which alleged the SR defendants should be held liable for conduct related to Robert, the individual. However, the SR defendants also assert that

11

plaintiff advanced a reverse veil piercing alter ego theory, which "seeks to satisfy the debt of an individual through the assets of an entity of which the individual is an insider." (*Curci Investments, LLC v. Baldwin* (2017) 14 Cal.App.5th 214, 221 [observing that the alter ego doctrine is "traditional veil piercing"].) Reverse veil piercing still requires pleading a unity of interest between an individual and the relevant corporation, as well as an inequitable result. (*Ibid.*; accord, *Blizzard Energy, Inc. v. Schaefers* (2021) 71 Cal.App.5th 832, 849–854.)

Here, plaintiff did not seek to hold the SR defendants liable for the judgment on an express, traditional alter ego theory or through allegations of reverse veil piercing. Indeed, the SR defendants concede that the SAC does not contain the term "alter ego." Yet, they contend the SAC's "factual allegations and [c]onspiracy cause of action" were essentially the same as an alter ego or reverse veil piercing theory.

We disagree. The SAC's conspiracy allegations were not based on any purported unity of interest between Robert and SR Capital (or Shlomo), or a claim that Robert had an ownership interest in SR Capital. Instead, the SAC repeatedly referred to a "money laundering scheme," based on a series of transactions between the various defendants acting in concert. In their demurrer, the SR defendants accurately pointed out that the SAC did *not* allege that Robert controls Shlomo or SR capital; the SAC did not assert any agency relationship exists between Robert and the SR defendants; in the SAC, plaintiff admitted "that Shlomo is 'the only owner, officer, director, member, and manager with any actual or real authority over' SR Capital"; and "Plaintiff has pleaded that Shlomo has complete ownership and control of SR Capital."

12

The SR defendants emphasize that plaintiff sought to satisfy Robert's debt through assets held by SR Capital, and that plaintiff alleged Robert used those assets as his "piggy bank." They also highlight the SAC's allegations that the defendants conducted the challenged financial transactions without following normal business and accounting practices, and the transactions involved Robert's money and thus "commingled" funds. The SR defendants argue that while these allegations and arguments may not have successfully established alter ego (or reverse veil piercing), we should nonetheless find them entitled to fees under section 1717.

These allegations and arguments do not establish that plaintiff sued the SR defendants on an alter ego or materially similar theory. Rather, the theory of liability underlying the conspiracy cause of action was a money laundering scheme, in which the separate defendants conspired to hide Robert's money and thereby aided him in evading the judgment. Notably, the SAC alleged the SR defendants were liable for damages in the *amount* of the judgment, not that the SR defendants had a legal obligation to satisfy the judgment by virtue of their relationship with Robert. *MSY Trading* and *347 Group* do not suggest that conspiracy or fraudulent transfer theories are, standing alone, the equivalent of an alter ego theory.

In sum, plaintiff's suit against the SR defendants was not an "action on a contract," within the meaning of section 1717. (§ 1717, subd. (a); *347 Group, supra*, 58 Cal.App.5th at p. 215.) Had plaintiff prevailed against the SR defendants, it would not have been entitled to attorney fees based on the underlying profit interest agreement. The SR defendants are therefore not entitled to attorney fees under section 1717.

13

## DISPOSITION

The trial court's order is affirmed.  Plaintiff WVJP 2018-3, LP shall recover its costs on appeal.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**


ADAMS, J.


We concur:


EDMON, P. J.


EGERTON, J.